Rosetta HARRIS, Plaintiff,

v.

MISSISSIPPI VALLEY STATE UNIVER-
SITY; Dr. William W. Sutton, Individu-
ally and in His Official Capacity as
President; Dr. W.E. Thomas, Individual-
ly and in His Official Capacity as Vice–
President for Academic Affairs and Dr.
Saliba Mukoro, Individually and in His
Official Capacity as Department Head
of Criminal Justice and Social Work De-
partment, Defendants.

Civ. A. No. 4:94–CV–305SO,
No. 4:94–cv–78 BN.

United States District Court,
N.D. Mississippi,
Greenville Division.

Sept. 22, 1995.

Ellis Turnage, Cleveland, MS, for plaintiff.

Robert G. Jenkins, Mississippi Attorney General's Office, Jackson, MS, for defendants.

## OPINION AND ORDER [1]

BARBOUR, Chief Judge.

In this case, Plaintiff, a tenured professor, who previously had additional administrative duties, alleges that the Defendants violated her rights under the United States Constitution and state law when they removed her administrative duties. The Court has before it the Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment and the Plaintiff's Cross–Motion for Partial Summary Judgment on the Procedural Due Process Claim. Having considered the motions, responses, supporting and opposing memoranda and the attached exhibits, the Court rules that Defendants' Motion is well taken and should be granted in part and Plaintiff's Cross–Motion is not well taken and should be denied. In addition, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, and therefore, dismisses those claims without prejudice.

### I. *Facts*

The Plaintiff, Rosetta Harris ("Harris"), began employment with Defendant Mississippi Valley State University ("MVSU") in 1977, as an instructor in the Social Work Department. In 1991, she was promoted to the position of Coordinator of the social work program. That program is accredited by the Council on Social Work Education ("CSWE") and, to maintain accreditation, must meet certain prescribed standards, including those related to the hiring of social work faculty.

---

1. Pursuant to the Order of Designation entered by Chief Judge Politz, United States Court of Appeals for the Fifth Circuit, on December 5, 1994, Chief Judge L.T. Senter, United States District Court for the Northern District of Mississippi, transferred this cause, by Order of Transfer dated August 11, 1995, to Chief Judge William H. Barbour, Jr., United States District Court for the Southern District of Mississippi.

During the spring of 1994, the Board of Trustees of Mississippi Institutions of Higher Learning ("the Board") approved a departmental reorganization at MVSU authorizing the merger of the criminal justice and social work programs to form the new Criminal Justice/Social Work Department. The Defendant, Dr. Saliba Mukoro ("Mukoro"), was appointed to be the new department head, while Harris maintained her position as Coordinator of the social work program.

In June, 1994, Harris was granted tenure, and a week later, she executed an employment contract for the position of "Assist. Professor/Program Coordinator—Dept. of Criminal Justice/Social Work" for the period beginning August, 1994, and ending May, 1995. The contract contained the following language:

This employment contract is subject to the following terms and conditions:

1. The laws of the State of Mississippi and the policies and by-laws of *the Board.*

\* \* \* \* \* \*

3. *The Board* shall have the authority to terminate this contract at any time for the following:

 a. Financial exigencies ...;

 b. Termination or reduction of programs, academic or administrative units ...;

 c. Malfeasance, inefficiency or contumacious conduct;

 d. For cause.

At some point in August 1994, Dr. Mohammad R. Hoque ("Hoque") was hired as an assistant professor in the social work program. By letter dated August 29, 1994, as Coordinator of the social work program, Harris notified Dr. Nancy Randolph ("Randolph"), Director of the Standardization and Accreditation Division of the CSWE, of Hoque's hiring and enclosed a copy of his resume. Harris also advised Randolph of the new mailing address and telephone number of the social work program.

Harris's letter prompted the following response from Randolph:

I am responding to your correspondence ... in which you indicate you have "learned" that a new faculty member ... has been hired to teach in the baccalaureate social work program which you coordinate.

Your letter raises two different concerns. First, it is apparent that you, as Program Coordinator, had no knowledge of the hiring of a faculty member to teach in your program. Such a hiring process is in noncompliance with two accreditation standards....

\* \* \* \* \* \*

The second issue regards Dr. Hoque's credentials. His curriculum vitae does not indicate that his academic work ... has been certified as comparable to degree programs accredited by the [CSWE]. Therefore, Dr. Hoque lacks the master's of social work degree required to allow him to teach required practice courses or to coordinate the field practicum.

Randolph set September 15, 1994, as the deadline for a response "so that the program's continued compliance with accreditation standards may be reviewed by the Commission on Accreditation at its meeting at the end of September."

By letter dated September 22, 1994, the Defendant, Dr. W.E. Thomas ("Thomas"), Vice–President for Academic Affairs, responded to Randolph's concerns, although he was "unclear as to the issue raised." He continued:

Dr. Hoque's credentials certainly must have been reviewed by the Program faculty as they are in the hands of the Program Coordinator. The process for hiring faculty at our institution is similar to that commonly used by other universities and involves two steps: 1. faculty review of applications and screening for appropriate candidates, and 2. a subsequent administrative process to hire an appropriate candidate. To my knowledge, this is exactly what happened in the case of Dr. Hoque.

Harris denies having reviewed or discussed Dr. Hoque's credentials with anyone and maintains she first learned of Dr. Hoque's employment when he was introduced at an August, 1994, faculty meeting.

Over the course of the next month, Harris, Mukoro and Thomas met several times to discuss the escalating problems associated with Hoque's hiring. Harris voiced her concerns about perceived inaccuracies in Thomas's letter to Randolph. Mukoro and Thomas became increasingly disturbed about Harris's disloyal and uncooperative attitude and directed her to write a letter to the CSWE supporting the hiring of Hoque. Harris refused, and on October 27, 1994, she met with the Defendant, Dr. William W. Sutton ("Sutton"), President of MVSU, who promptly removed Harris from her position as Coordinator of the social work program, though he did not relieve her of her tenured faculty position. That action was confirmed by letter the following day. Since that time, Harris has been under medical and psychiatric care and is presently on a medical leave of absence from MVSU on the advice of her medical doctor and psychiatrist.

Approximately one month after she was relieved of her administrative duties, Harris initiated the instant suit, seeking declaratory and injunctive relief and compensatory and punitive damages for violations of the First and Fourteenth Amendments and for negligent and intentional infliction of emotional distress under state law. She sued MVSU and Drs. Sutton, Thomas and Mukoro, individually and in their official capacities. She also moved for a temporary restraining order and/or preliminary injunction, which this Court denied.

The gravamen of Harris's Complaint centers on her August 29, 1994, letter. She also alleges that Defendants removed her administrative duties and responsibilities without due process. Defendants answer with broad allegations concerning Harris's uncooperative and insubordinate attitude toward the combining of the criminal justice and social work departments into one.

II. *Applicable Legal Standard for Consideration of Defendants' Motion*

 Defendants' motion is styled as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), or in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56. Although motions to dismiss and motions for summary judgment are interrelated and are often asserted in the alternative, there are differences in the legal standards applied under the two motions. The purpose of a 12(b)(6) motion is to test the statement of the claim for relief as set out in the complaint. *See Murray v. Amoco Oil Co.*, 539 F.2d 1385, 1387 (5th Cir.1976). The motion may be granted "only if it appears that no relief could be granted under any set of facts that could be proved consistent with the allegation." *Baton Rouge Bldg. & Constr. Trades Council v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir.1986) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). In considering a motion to dismiss, the Court's inquiry is limited to the contents of the pleadings, *Jackson v. Procunier*, 789 F.2d 307, 309 n. 4 (5th Cir.1986), and all material allegations in Plaintiff's Complaint must be taken as true and construed in the light most favorable to Plaintiff. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983).

 In contrast, a motion for summary judgment goes beyond the pleadings and tests the sufficiency of the evidence a party can produce in support of those issues on which it will bear the burden of proof at trial. Because the parties have submitted and the Court has considered materials outside of the pleadings, the Court will treat Defendant's Motion as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 12(b)(6); *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 573 (5th Cir.1980); *Young v. Biggers*, 938 F.2d 565, 568 (5th Cir.1991).

Rule 56 of the Federal Rules of Civil Procedure states in relevant part that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). The United States Supreme Court has held that this language "mandates the entry of

summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Moore v. Mississippi Valley State Univ.*, 871 F.2d 545, 549 (5th Cir.1989); *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir.1988).

■ The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323–324, 106 S.Ct. at 2552–2553. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

■ Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir.1980). Summary judgment is improper where the court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir.1962).

### III. *Discussion*

In their motion for summary judgment, the Defendants raise two primary defenses: Eleventh Amendment immunity and qualified immunity. They also argue that "[t]here is

no factual disparity in this matter to be determined," (Defs.' Brief at 1), which presumably means they believe any remaining issues are questions of law for the Court. These matters will be addressed separately.

### A. Eleventh Amendment Immunity

■ Generally, the Eleventh Amendment "provides immunity to a State against suits in federal court by a citizen of the State against the State or a state agency or department." *Saahir v. Estelle*, 47 F.3d 758, 760 (5th Cir.1995). For Eleventh Amendment purposes, MVSU is an agency of the State of Mississippi, and Sutton, Thomas and Mukoro are State officials. *Roos v. Smith*, 837 F.Supp. 803, 806 n. 3 (S.D.Miss.1993) (citing *Jagnandan v. Giles*, 538 F.2d 1166, 1174 (5th Cir.1976)). While Harris "concedes that a monetary damage award may not be imposed against MVSU, a state entity, retroactively," (Pl.'s Mem.Supp.Resp. at 11), this is equally true as to any award of prospective relief, whether arising under federal or state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984); *Saahir*, 47 F.3d at 761; *Harris v. Angelina County*, 31 F.3d 331, 338 n. 7 (5th Cir.1994). *See also* Martin A. Schwartz and John E. Kirklin, *Section 1983 Litigation: Claims, Defenses, and Fees* §§ 8.1–15 (2d ed. 1991).

■ As to Sutton, Thomas and Mukoro, "[u]nder the authority of *Ex parte Young* ... and later authority, a § 1983 action seeking prospective injunctive relief based on federal constitutional violations may be brought against state officials in their official capacities." *Harris*, 31 F.3d at 337–38. *See also Saahir*, 47 F.3d at 760–61 (since acts by state officials contrary to federal law are not considered to be authorized by the state and since suits seeking to enjoin such acts are not suits against the state, suit challenging constitutionality of state official's action is not one against state and is not barred by Eleventh Amendment) (citing *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). These Defendants are therefore not accorded Eleventh Amendment immunity in that context. However, any state law claims against these defendants in their official ca-

pacities are barred by the Eleventh Amendment. *Pennhurst,* 465 U.S. at 121, 104 S.Ct. at 919; *Saahir,* 47 F.3d at 761. *Cf. Will v. Michigan Department of State Police,* 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 2312 n. 10, 105 L.Ed.2d 45 (1989) (state, its agencies and its officials acting in their official capacities are not "persons" under § 1983, except "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State' ").

As such, the Court finds: (1) that MVSU is entitled to Eleventh Amendment immunity on all federal and state law claims in this case and is therefore dismissed from this cause as a named Defendant, and (2) that Drs. Sutton, Thomas and Mukoro in their official capacities are entitled to Eleventh Amendment immunity on the state law claims but not on the federal claims for prospective relief. The request for qualified immunity by these individual Defendants in their official capacities will be addressed next.

### B. Qualified Immunity

■■■ According to the United States Court of Appeals for the Fifth Circuit, "qualified immunity shields government officials performing discretionary functions 'from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.' " *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1183 (5th Cir.1990) (quoting *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987)). In examining the individual Defendants' claims of qualified immunity on summary judgment, the Court in this case must:

> first inquire whether [Plaintiff] has alleged the violation of a clearly established constitutional right. For a right to be clearly established, there does not have to be a

prior case directly on point, but the unlawfulness of the precipitating acts must be apparent in light of the existing law. [The Court] then inquire[s] whether the defendant's conduct was objectively reasonable in light of the legal rules clearly established at the time of the events in issue. Thus, even if [the Court] find[s] a violation of [Plaintiff's] constitutional rights, the individual defendants are immune from liability if reasonable public officials could differ on the lawfulness of their actions. The Court need not reach this second inquiry, however, if [Plaintiff] fails to tender the requisite summary judgment evidence that the individual defendants violated a clearly established right.

*Hassan v. Lubbock Indep. Sch. Dist.,* 55 F.3d 1075, 1078, 1079 (5th Cir.1995) (citations omitted). Unless Harris can make such a showing, the individual Defendants are protected from liability and entitled to summary judgment as a matter of law. *See Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir. Aug. 15, 1995).

■■■ Proceeding under the analysis set forth above, Harris alleges that the acts of Sutton, Thomas and Mukoro violated her "clearly established" First Amendment right to free speech and Fourteenth Amendment right to procedural due process.[2] In response, the Defendants argue that they are entitled to qualified immunity since Harris fails to state a claim for relief based upon a constitutional deprivation. *See Hassan,* 55 F.3d at 1078–79 n. 7 (stating "a right is not clearly established if there is no actual constitutional violation alleged").

#### 1. First Amendment Free Speech Claims

■■■ In her First Amendment claim, Harris argues that her letter to Dr. Randolph, dated August 29, 1994, was constitutionally protected speech[3] and that the Defendants

---

**2.** In a general sense, the rights to free speech and procedural due process are "clearly established." However, under the qualified immunity analysis, "the determination whether a right is 'clearly established' is a more particularized inquiry" that focuses on whether a reasonable official would know that the specific act in question was unlawful. *Hassan,* 55 F.3d at 1078–79 n. 7

(citing *Anderson,* 483 U.S. at 639–40, 107 S.Ct. at 3038–39).

**3.** After a careful review of the record, it appears to the Court that Harris bases her First Amendment claim entirely on the August 29, 1994, letter to the CSWE. Since Harris points to no other writing or communication which she ar-

retaliated against her for notifying the CSWE of Dr. Hoque's hiring in the manner she did.[4] For a public employee to assert a retaliation claim cognizable under the First Amendment, the employee must establish, as a threshold matter, that her speech involved a matter of public concern.[5] As explained by the United States Supreme Court:

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). Following the rubric of *Connick*, the Fifth Circuit has observed that a communication rises to the level of public concern if a person speaks "primarily as a citizen rather than as an employee addressing matters only of personal concern." *Schultea v. Wood*, 27 F.3d 1112, 1119 (5th Cir.1994) (citing *Thompson v. City of Starkville*, 901 F.2d 456, 465 (5th Cir.1990)).

To determine at the summary judgment stage whether Harris's speech relates only to her personal interests as an employee or to a matter of public concern, the Court must examine "the content, form, and context [of the speech at issue], as revealed by the whole record."[6] This determination necessarily requires the Court to assess Harris's primary motivation in sending the August 29, 1994, letter to the CSWE stating what it did. *Dorsett v. Board of Trustees for State Colleges and Univ.*, 940 F.2d 121, 124 (5th Cir. 1991).

Since the "content" of Harris's letter is a relevant factor in assessing whether that speech addresses a matter of public concern, the Court repeats it *in toto* below:

> On August 15, 1994, I learned that Dr. Mohammad Rafiqul Hoque had been hired in the Social Work Program. Enclosed is copy of his resume.

> Mississippi Valley State University Social Work Program also has a new mailing address and telephone number. Please direct all future communication to: [new address and phone number].

> If you have questions or need additional information, please contact me. [Signed Rosetta Harris].

---

gues was constitutionally protected speech, the narrow issue before the Court is whether her letter involved a matter of public concern.

**4.** The parties do not seriously dispute that the First Amendment prohibits a public employer from retaliating against an employee for exercising her right to free speech. Nor do they dispute whether the contours of this right were clearly established when the Defendants relieved Harris of her administrative duties. However, the Defendants contend that Harris's claim fails to meet the constitutional standard applied to public employee free speech cases.

**5.** *Vojvodich v. Lopez*, 48 F.3d 879, 884 (5th Cir. 1995); *Schultea v. Wood*, 27 F.3d 1112, 1118 (5th Cir.1994), *reh'g en banc*, 47 F.3d 1427 (5th Cir.1995). This circuit applies the following constitutional analysis to public employee free speech cases:

> In order to establish a constitutional violation [the plaintiff] must first prove that her speech involved a matter of public concern. Second, she must demonstrate that her interest in commenting upon matters of public concern is greater than the defendants' interest in promoting the efficiency of the public services [they] perform. Third, she must show that her

speech motivated the defendants' decision to fire her.

*Thompson v. City of Starkville*, 901 F.2d 456, 460 (5th Cir.1990) (citations and internal quotations omitted). As explained in *Schultea*, 27 F.3d at 1118–1119 n. 11, "if the public concern hurdle is cleared," the district court conducts the second threshold inquiry which involves interest balancing. If the interests of the employee, in speaking as a citizen upon a matter of public concern, outweigh the interests of the employer, "the case is submitted to the jury on causation—whether the plaintiff's speech was a substantial or motivating factor in the defendant's decision." *Id.* at 1119 n. 11 (citing *Knowlton v. Greenwood Indep. Sch. Dist.*, 957 F.2d 1172, 1177 n. 6 (5th Cir. 1992)). Whether the speech at issue in a particular case involves a matter of public concern is a question of law, *id.* at 1119, and if the Plaintiff fails to meet this threshold, summary judgment in favor of the defendant is proper. *See Dorsett v. Board of Trustees for State Colleges and Univ.*, 940 F.2d 121, 125 (5th Cir.1991).

**6.** *Connick*, 461 U.S. at 147, 103 S.Ct. at 1690. This issue is a question of law to determined by the Court. *Dorsett*, 940 F.2d at 124 (citing *Rankin v. McPherson*, 483 U.S. 378, 386 n. 9, 107 S.Ct. 2891, 2897–98 n. 9, 97 L.Ed.2d 315 (1987)).

In her affidavit, Harris asserts that her letter "also advised that Dr. Hoque's employment was without [her] knowledge, participation or involvement...." (Aff. of Rosetta Harris at 3). Since this assertion is not directly expressed anywhere in her letter, Harris apparently implies that she intended Randolph and the CSWE to interpret the phrase "learned that [Hoque] had been hired" in such a manner. Even assuming this obvious embellishment to be true, the Court is not swayed from its conclusion that the substance of Harris's letter concerns only matters of personal concern.

Harris states in her affidavit that for accreditation purposes the CSWE required written notice of new faculty members and a copy of their qualifications. Complying with this requirement, Harris, acting primarily as an employee commensurate with her duties as Coordinator of the social work program, sent her letter for the purpose of notifying the CSWE of Hoque's hiring and providing Randolph with a copy of Hoque's resume. (*See* Aff. of Rosetta Harris at 2–3). Whether Harris participated in Hoque's hiring was possibly a concern of the CSWE. However, on its face, Harris's letter involves completely policies and procedures of MVSU and the CSWE which are not concerns of the public.

Although the content of her letter is benign and innocuous, Harris rather speciously attempts to characterize it as a communication which, if taken in its proper "form" and "context," disclosed misconduct by public officials. Harris argues that her letter to the CSWE "brought to light actual or potential wrongdoing, [and] breach of public trust" in the social work program at MVSU which is a matter of public concern. (Pl.'s Mem.Supp. Resp. at 19–20). In support of this contention, Harris offers Randolph's response letter of August 31, 1994, which indicated that Hoque's hiring may have violated CSWE hiring standards.

In this context, Harris contends that her letter fits within Fifth Circuit authority which recognizes "whistle-blowing" as a matter of public concern. *See, e.g., Schultea,* 27 F.3d at 1119; *Brown v. Texas A & M Univ.,* 804 F.2d 327, 337 (5th Cir.1986). While the Court certainly agrees with the proposition that a employee speaks primarily as a citizen when disclosing public misconduct, the facts of the case *sub judice* do not present such a situation. First, the Court is not convinced that Harris's letter disclosed or reported anything other than Hoque's hiring and the new address of the social work program at MVSU. Second, even assuming *arguendo* that Harris's letter "brought to light" a failure to follow CSWE hiring guidelines, nothing in her affidavit remotely indicates that she intended such a secondary effect at the time she wrote the letter.[7] In fact, Harris's own statements confirm that her predominant motivation in writing the letter was to comply with CSWE notification procedures.

Harris attempts to bolster the deficiencies of her "whistleblower" argument by suggesting that the public in general will be deprived of a quality educational experience if the social work program at MVSU loses its accreditation because of failure to adhere to CSWE standards. While this may be true, the Fifth Circuit has on a number of occasions rejected this type of attenuated argument, reasoning that:

> Because almost anything that occurs within a public agency *could* be of concern to the public, we do not focus on the inherent interest or importance of the matters discussed by the employee. Rather, our task is to decide whether the speech at issue in a particular case was made primarily in the plaintiff's role as citizen or primarily in his role as employee. In making this determination, the mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment.

*Terrell v. University of Texas System Police,* 792 F.2d 1360, 1362 (5th Cir.1986) (emphasis original); *see also Caine v. Hardy,* 943 F.2d 1406, 1416 (5th Cir.1991); *Ayoub v. Texas A & M Univ.,* 927 F.2d 834, 837 (5th Cir.1991).

---

**7.** Harris's artfully drawn pleadings appropriately allege that she spoke out only as a citizen primarily concerned about the continued accreditation of the social work program at MVSU. However, "unsworn pleadings are ... not competent summary judgment evidence." *Dorsett,* 940 F.2d at 124 (citing *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553).

While Harris may have privately considered that Hoque's hiring was in violation of the CSWE standards, she expressed this belief, if at all, only after receiving Randolph's response letter.[8] Since "[r]etroactive embellishment cannot transform personal [concerns] into matters of public concern," *Dodds v. Childers*, 933 F.2d 271, 274 (5th Cir.1991), the Court finds that Harris was acting primarily as an employee when she wrote her letter to the CSWE.

After reviewing the summary judgment evidence in Harris's favor, the Court finds that the content, context and form of her letter do not reflect any concerns about the staff and the accreditation of the social work program at MVSU. While such concerns are perhaps matters of public concern, they were not expressed anywhere in her letter. Had her letter to the CSWE specifically stated that in her opinion the standards of the CSWE had not been followed in the hiring of Dr. Hoque and that she had unsuccessfully made that argument to Drs. Sutton, Thomas and/or Mukoro, this Court would be inclined to rule differently on this issue. However, in this case, the Plaintiff wants to complain of a violation of her right to free speech when if fact she really did not speak at all. Given these circumstances and the state of Harris's proof, the Court must conclude that to the extent that Harris spoke at all in her letter, she spoke primarily in her role as an employee of MVSU who also served in an administrative capacity as program coordinator for the social work program. Because Harris fails to satisfy the public concern threshold,[9] her free speech claim is not cognizable under the First Amendment and must be dismissed.[10]

In dismissing Harris's free speech claim on these grounds, the Court emphasizes that her proof in opposition to Defendants' motion consists entirely of her August 29, 1994, letter and that this is the only point which she argues in her brief. However, because there are assertions contained Harris's affidavit which she fails to address but which arguably relate (albeit tenuously) to her right to free speech, the Court, in an abundance of caution, will address such matters *sua sponte*.

Because Harris offers no proof that she wrote her August 29, 1994, letter primarily as a concerned citizen, her letter, taken by itself, does not relate to a matter of public concern. However, Harris's affidavit also reveals that after she wrote the August 29, 1994, letter she refused to write a letter to the CSWE, which Thomas requested, in support of Hoque's hiring and that on several occasions she may have openly disagreed with the her superiors as to the compliance of MVSU with CSWE hiring standards.[11] Although Harris completely fails to argue this point, the Court will assume for the sake of discussion that taken as a whole these circumstances are sufficient to clear the public concern hurdle.[12]

8. As stated previously, *see supra* footnote 3. Harris does not argue that the Defendants' retaliated against her for making a constitutionally protected communication other than in the August 29, 1994, letter.

9. Having found that Harris's speech fails to address a matter of public concern, the Court need not consider whether she meets the other elements of a public employee First Amendment speech claim. *See supra* footnote 5.

10. Since Harris fails to demonstrate a First Amendment violation, it is unnecessary to address whether the Defendants are entitled to qualified immunity on this claim.

11. Since these circumstances occurred *after* Harris wrote her letter of August 29, 1994, they were not relevant in determining the "context" of the letter for the purpose of assessing Harris's primary motive for writing it.

12. In making this assumption, the Court must also make the assumption that the "misconduct" which Harris claims she "brought to light" is in fact a matter of public concern. Although there is authority holding that any misconduct by a public official involves a public concern, Harris has not cited, and the Court through its own research has not found, authority specifically addressing whether a public official's failure to follow the policies and procedures of an accrediting agency amounts to misconduct. Such "misconduct" by MVSU officials in the form of a failure to follow CSWE hiring standards certainly does not rise to the level of the criminal activity alleged in the cases cited by the Plaintiff. *See Schultea*, 27 F.3d at 1118 (letter written by terminated employee involved employer's possibly criminal behavior); *Brown*, 804 F.2d at 337 (discharged employee disclosed financial improprieties of university officials). Therefore, the Court emphasizes that it is merely assuming and not deciding this particular point.

Assuming Harris meets her initial public concern threshold, the Court must now balance the interests of Harris, as a citizen, in commenting on a matter of public concern against the competing interests of MVSU. *See Schultea*, 27 F.3d at 1118–119 n. 11. According to the Fifth Circuit, the analysis for this second threshold inquiry is as follows:

> If the plaintiff meets [her public concern burden], the employer then must establish that its interest in promoting the efficiency of the services provided by its employees outweighs the employee's interest in engaging in the protected activity. This analysis in reality is a sliding scale or spectrum upon which public concern is weighed against disruption.
>
> \* \* \* \* \* \*
>
> In evaluating particular cases, this Court has looked to the factors discussed by the Supreme Court in *Connick*. Although not intended to be the exclusive considerations, these factors include (1) the degree to which the employee's protected activity involved a matter of public concern, and the gravity of that concern, (2) whether close working relationships are essential to fulfilling the responsibilities of the public office and the extent to which the employee's protected activities may have affected those relationships, (3) the time, place, and manner of the employee's activities, and (4) the context in which the employee's activities were carried out. A proper consideration of these factors allows a court to balance the plaintiff's interest in the claimed protected activity against the alleged disruption caused by that activity to the effective and efficient fulfillment of the government's public responsibilities.

*Vojvodich v. Lopez*, 48 F.3d 879, 885 (5th Cir.1995). Before applying these considerations to the facts of the instant case, the Court notes that Thomas and Mukoro both assert in their affidavits that Harris's conduct had a disruptive effect on the operation of the Criminal Justice/Social Work Department and as a result they recommend to Sutton that she be relieved of her administrative duties.[13]

As a citizen, Harris arguably had an interest in the continued accreditation of social work program at MVSU. However, on a sliding scale, the degree of her participation in speaking about this public concern is tenuous at best, and the gravity of this matter is at most minimal. Harris fails to recognize that MVSU shared her interest in maintaining the accreditation of the social work program. In fact, after Harris "brought to light" this matter of public concern, Sutton, Thomas and Mukoro demanded her assistance in order to correct or resolve the issue of Hoque's hiring. As Coordinator of the social work program, Harris's cooperation with her superiors (with whom she shared a close working relationship) was certainly necessary to achieve the level of efficiency required by the CSWE for accreditation purposes. Harris's "speech," which took place in meetings with her supervisors, indicates her staunch opposition to MVSU's objectives in regard to the social work program and Hoque's hiring. However, MVSU had an overriding interest in ensuring that its employees were committed to the efficient administration of the combined departments. In terms of the context of Harris's protected activity, the Court notes that to reach this point in the analysis it had to assume: (1) that her letter of August 29, 1994, disclosed a matter of public concern; (2) that her refusal to write a letter in support of Hoque's hiring and open disagreement with her supervisors in regard to CSWE standards continued to involve this matter; and (3) that as a result MVSU removed her administrative duties. Based upon a consideration of these circumstances, the Court finds, as alternative grounds for its decision to dismiss Harris's First Amendment claim, that the interests of MVSU in promoting efficiency outweigh Harris's interest in speaking.

### 2. Fourteenth Amendment Procedural Due Process Claim

#### a. Property Interest

As the basis of her Fourteenth Amendment claim, Harris argues that she had a

---

**13.** The Defendants therefore have met their burden of producing evidence that MVSU in fact had an interest in promoting efficiency. *Cf. Vo-* *jvodich,* 48 F.3d at 886 (employer failed to carry this burden of production).

property interest in her position as program coordinator and that the Defendants removed her administrative responsibilities and duties without affording her due process.[14] The Defendants counter that any property right of Harris extended only to her continued employment at MVSU. Since Harris has not been fired or even threatened with termination, continues to be employed by MVSU as a tenured professor and receives her full salary, the Defendants argue she has not been deprived of employment under the Fourteenth Amendment.

■ To prevail on a section 1983 claim alleging a violation of a property interest, the Plaintiff must show that a constitutionally protected right has been deprived without due process of law.

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.
>
> \* \* \* \* \* \*
>
> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). This Court, therefore, must decide whether Harris had a constitutionally protected property interest in her position as program coordinator by reference to state law. *Id.; Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Jett v. Dallas Independent School Dist.*, 798 F.2d 748, 753 (5th Cir.1986), *aff'd in part, remanded in part*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

■ The Defendants correctly point out that Harris possesses a property interest in

her tenured faculty position at MVSU. Attempting to use this against her, the Defendants argue that any other benefit, accruing to Harris in either her administrative or faculty capacity, emanates solely from her general property interest in continued employment at MVSU.

Because she is still a tenured professor at MVSU, Harris asserts that the July 1, 1994, contract created an additional property interest in her responsibilities and duties as program coordinator. *See Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir.1993) (express contract can create property interest). Pursuant to this contract, Harris contends that the Defendants could not remove her administrative duties "for cause" or otherwise without predeprivation notice and a hearing. *See Conley v. Board of Trustees of Grenada County Hosp.*, 707 F.2d 175, 179 (5th Cir.1983) (removal "for cause" requires notice and hearing); *see also Davis v. Mann*, 882 F.2d 967, 972–73 (5th Cir.1989) (dismissal for "malfeasance, inefficiency or contumacious conduct" triggers due process protection).

In support of their position that Harris enjoys no property interest in her administrative position, the Defendants cite as controlling authority the case of *Quives v. Campbell*, 934 F.2d 668, 671 (5th Cir.1991). Quoting an earlier Fifth Circuit opinion, *Jett*, 798 F.2d at 754 n. 3, the *Quives* panel stated:

> '[When a public employee has a legitimate entitlement to his employment, the due process clause may protect as property no more than the status of being an employee of the governmental employer in question together with the economic fruits that accompany the position.]'

*Quives*, 934 F.2d at 671. According to the Defendants' reasoning, since Harris had a legitimate entitlement to her employment at MVSU, the due process protection extended only to her status as a tenured faculty member. Defendants' brief, however, fails to address significant language from *Jett* which was not included in the *Quives* opinion. Di-

---

14. In her Complaint, Harris apparently asserted liberty and property interests in her position as program coordinator. However, since no liberty interest argument appears in her response, she has apparently abandoned that contention.

rectly following the above quotation, the *Jett* Court continued:

> Although the governmental employer may specifically create a property interest in a noneconomic benefit—*such as a particular work assignment*—a property interest in employment generally does not create due process protection for such benefits.

*Jett,* 798 F.2d at 754 n. 3 (emphasis added).

In light of this precedent, the Court finds that when Defendant Sutton, acting on behalf of the Board, entered into a clear and unambiguous written contract with Harris, MVSU specifically created a property interest in the position of program coordinator.[15] Because this contract concerned a "particular work assignment," to be performed contemporaneously with her duties as a tenured professor, Harris had more than an abstract need or desire to enjoy the economic, as well as, the noneconomic benefits of the duties and responsibilities associated with that position. Since Harris has a legitimate property interest in the noneconomic benefits of program coordinator, the fact that she remains employed by MVSU and continues to receive her full salary is not dispositive of her procedural due process claim.

#### b. Procedural Due Process

Having found the existence of a property interest, the Court must now determine under federal law whether Harris received constitutionally sufficient procedural due process.[16] Though there is a plethora of case law defining the process due in many employment contexts, neither the Supreme Court nor the Fifth Circuit has articulated what process, if any, is to be afforded when a public university relieves a tenured professor of duties and responsibilities associated with an appointed administrative position. However, based on established principles of procedural due process jurisprudence, the Court finds that the Fourteenth Amendment requires at least some procedural safeguards in this situation.

█ At a minimum, due process requires that a public employee receive "notice and an opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985); *Page v. DeLaune,* 837 F.2d 233, 239 (5th Cir.1988). For "notice" to be effective, the employee must receive an oral or written explanation of the charges against her. *Page,* 837 F.2d at 239. Additionally, an adequate "opportunity to respond" entails at least "some kind of a hearing," *Loudermill,* 470 U.S. at 536, 105 S.Ct. at 1490, which allows the employee to address "the substance of the allegations against her before a final deprivation occurs." *Williams v. Texas Tech Univ. Health Sciences Ctr.,* 6 F.3d 290, 293 (5th Cir.1993).

█ To determine the extent of procedural protection required in a given situation, the court should look to the balancing test enunciated by the Supreme Court in *Mathews v. Eldrige,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In *Eldridge,* the Supreme Court identified three factors to consider in deciding how much process a particular property interest deserves:

> [F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any of additional or substitute procedural safeguards; and finally, the Governments interest, including

---

15. *Cf. Russell v. Harrison,* 736 F.2d 283, 287 (5th Cir.1984) (affirming that analogous one year contracts for employment conferred a property interest). The presence of this contract distinguishes the instant facts from cases in which the plaintiff could not show an entitlement existing under state law to noneconomic benefits such as positional duties and responsibilities. *See Kinsey v. Salado Indep. Sch. Dist.,* 950 F.2d 988, 997 (5th Cir.1992) (plaintiff failed to show entitlement to position of superintendent); *Jett,* 798 F.2d at 754 (oral contract not sufficient to create property interest in coaching position); *Raju v. Rhodes,* 809 F.Supp. 1229, 1239 (S.D.Miss.1992) (physi-

cian had no property interest in appointed position of director of department); *see also Davis v. Mann,* 882 F.2d 967, 973 (5th Cir.1989) (declining to address whether written contract conferred property interest upon dental student in position of general resident).

16. Evaluation of a procedural due process claim involves a two step process. The first step requires the Court to decide whether a protected interest exists. The second step requires the Court to determine what process is due in a particular situation.

the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335, 96 S.Ct. at 903. Furthermore, where a governmental employer provides the public employee an opportunity to respond in a full post-deprivation hearing, "pretermination due process is limited." *Browning v. City of Odessa*, 990 F.2d 842 (5th Cir.1993) (citing *Loudermill*, 470 U.S. at 546, 105 S.Ct. at 1495). When full post-deprivation hearings are available, for example through an employee grievance procedure, the Fifth Circuit has stated:

> A satisfactory pretermination "hearing" need not be elaborate, for such hearing is merely designed to prevent the employer from making a mistake. The purpose of the hearing is simply to ensure that the charges raised against the employee are true and support his or her dismissal. Thus, an informal hearing which allows the employee to give his version of the facts sufficiently hedges against an erroneous dismissal and likewise satisfies the requirements of due process.

*Browning*, 990 F.2d at 844 (citations omitted); *see also Thurston v. Dekle*, 531 F.2d 1264, 1273 (5th Cir.1976), *vacated on other grounds*, 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978) (stating post-deprivation procedures must be precipitated by "risk reducing" pretermination procedures). In such a situation, failure to avail oneself of post-deprivation procedures thwarts a later claim of inadequate due process. *Browning*, 990 F.2d at 845 n. 7; *Rathjen v. Litchfield*, 878 F.2d 836, 839–40 (5th Cir.1989).

Before applying the above principles to the facts of the instant case, the Court notes that neither party has adequately briefed this issue. Harris flatly claims that the Defendants failed to provide her with written notice and did not afford her an opportunity to respond prior to the removal of her administrative duties.[17] In predictable fashion, the Defendants assert that Harris was notified of the charges against her and that she ignored the post-deprivation MVSU employee grievance procedure.

By letter dated October 28, 1994, Defendant Sutton expressly notified Harris of the decision to remove her administrative duties and responsibilities. Although this letter did not specifically convey the reasons for this action, during the month of October 1994, Harris, according to her affidavit, had met several times with one or more of the Defendants to discuss her uncooperative and insubordinate attitude in regard to the social work program in general and the hiring of Dr. Hoque in particular.[18] Against this background of ongoing friction, Sutton met with Harris on October 27, 1994, and he personally informed her that he was relieving her as program coordinator. Under these circumstances, the Court finds that Harris received an adequate oral or written explanation of the charges against her.

Whether Harris had an "opportunity to respond" to the charges against her presents a more difficult question. As a general proposition, a tenured public employee is entitled to a hearing before her employment is terminated or suspended without pay. *See, e.g., Loudermill*, 470 U.S. at 546, 105 S.Ct. at 1495; *Nichols v. City of Jackson*, 848 F.Supp. 718, 721 (5th Cir.1994). However, because this case involves noneconomic benefits associated with an administrative appointment rather than a termination or suspension of employment, the Court must apply the *Eldrige* factors to determine the extent of predeprivation due process to which Harris was entitled.

As a state university, MVSU has a significant interest in having reasonable discretion to make daily administrative deci-

---

**17.** Harris argues that it is undisputed that the Defendants failed to provide her with predeprivation procedural due process, and therefore, she is entitled to prevail on her cross-motion for partial summary judgment on this claim. However, as the foregoing discussion will illustrate, Harris's cross-motion is not well taken.

**18.** Prior to her final meeting with Sutton on October 27, 1994, Harris, according to her affidavit, met on September 28, 1994, with Mukoro; on September 29, with Mukoro and Thomas; on September 30, with Mukoro; on October 3, with Mukoro and Thomas; on October 7, with Thomas; on October 18, with Thomas.

sions. *See, e.g., Williams,* 6 F.3d at 293. To avoid needless administrative backlog, universities should have substantial leeway in implementing changes that may affect only a few employees. *Id.; see generally Texas Faculty Ass'n v. University of Texas at Dallas,* 946 F.2d 379, 385–86 (5th Cir.1991). On the other hand, Harris has private property interest in the duties and responsibilities of program coordinator. While such "property" is not insubstantial, it falls well short of an employee's interest in public employment cut short by termination or suspension without pay. The Court finds that given these considerations the interests of MVSU outweigh Harris's property interest.

Since the *Eldrige* scales tip in favor of MVSU, the extent of predeprivation process required in this case by the Fourteenth Amendment is reduced accordingly. In this regard, the Court notes that Harris met with Sutton (the decision maker) on October 27, 1994, and discussed the removal of her administrative duties and responsibilities. Although this meeting only lasted a few minutes, it sufficed to afford Harris an opportunity to explain her position and to minimize the risk of erroneous deprivation. *See Browning,* 990 F.2d at 844 (stating thirty minute meeting with decision maker was sufficient pretermination process where full post-deprivation was also available).

In addition, Harris's entitlement to extensive predeprivation hearings is also limited by the fact that MVSU provided additional safeguards in the form of an elaborate post-deprivation grievance procedure. Through this process, Harris could have further addressed the charges against her and obtained administrative review of Sutton's action. However, Harris fails to explain in her affidavit or brief how the MVSU grievance procedures were constitutionally inadequate or why she did not avail herself of them.[19]

Based on the foregoing discussion, the Court is of the opinion that the Defendants provided Harris with sufficient procedural due process. The Defendants afforded Harris notice and a "risk reducing" pretermination hearing. Although the meeting between Sutton and Harris was brief and informal, the due process clause required nothing more since a full post-deprivation grievance procedure was available. *See Id.* at 844–45. In light of these facts, the Court must conclude that the actions of the Defendants met the minimum requirements of procedural due process. As such, Harris's Fourteenth Amendment claim should be dismissed.

### 3. Qualified Immunity and Procedural Due Process

■ Even assuming *arguendo* that the Defendants' failure to provide Harris with a more extensive pretermination hearing offended the Fourteenth Amendment, the Court finds that she has not demonstrated that such a constitutional right was "clearly established" for the purpose of refuting Defendants' qualified immunity defense.[20] When the affirmative defense of qualified immunity is raised, the Plaintiff has the burden of convincing the court that the constitutional right in question was clearly established at the time of the allegedly offensive conduct. *Davis v. Scherer,* 468 U.S. 183, 197, 104 S.Ct. 3012, 3021, 82 L.Ed.2d 139 (1984).

■ Although it is not necessary that there be case law directly on point for a constitutional right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official must have plainly known he was infringing upon it. *Hassan,* 55 F.3d at 1078–79. Certainly, the minimal requirements discussed at length above were clearly established in 1994 when MVSU officials removed Harris from her administrative position. Any reasonable public official should have known at that time

---

**19.** Harris does not assert that she was unaware of the grievance procedure or that she was unsure whether it applied to her particular situation. Such allegations could have possibly presented factual questions on this issue and enabled her Fourteenth Amendment claim to survive summary judgment. *See, e.g., Russell,* 736 F.2d at 290. However, since she attached a copy of the MVSU grievance procedure as Plaintiff's exhibit (P–30), she was presumably aware of the availability of this process.

**20.** Even if the Defendants failed to provide Harris procedural due process, she would not be entitled to partial summary judgment on this claim because she has failed to rebut the issue of qualified immunity.

that *some* procedural due process must be afforded to an employee in Harris's position.[21] However, Harris has not cited, and this Court has not found through its own research, authority in any circuit clearly holding that the Fourteenth Amendment requires a full predeprivation hearing for the administrative removal of noneconomic benefits. In the absence of any such guiding precedent, a reasonable administrator could have concluded that Harris could be relieved of her administrative position without an extensive predeprivation hearing and that such action would not trample on the protection guaranteed by the Constitution.[22]

Under the facts of the case *sub judice,* the Court declines to find that the right to a full predeprivation hearing was clearly established when the Defendants removed Harris as program coordinator or that they acted in an objectively unreasonable manner in light of existing procedural due process jurisprudence. Accordingly, the Court concludes in the alternative that Defendants Sutton, Thomas and Mukoro are immune from suit as to any alleged violation of Harris's right to predeprivation procedural due process.

### C. Remaining State Law Claims

In her Complaint, Plaintiff also asserts state law claims against Defendants Sutton, Thomas and Mukoro in their individual capacities based upon intentional and negligent infliction of emotional distress. Although Harris offers little support for these claims, the Court, pursuant to 28 U.S.C. 1367(c)(3), declines to exercise supplemental jurisdiction over them. Since the Court has dismissed all of the federal claims that gave it original jurisdiction, the state law claims against these Defendants pending before this Court will be dismissed without prejudice. In declining to exercise jurisdiction, it should be apparent that the Court has not addressed the merits of the Defendants' motion as it pertains to Plaintiff's state law claims.

### IV. *Conclusion*

To summarize the preceding rulings, the Court finds as follows: (1) MVSU is entitled to Eleventh Amendment immunity on all federal and state law claims in this case; (2) Defendants Sutton, Thomas and Mukoro in their official capacities are entitled to Eleventh Amendment immunity on Plaintiff's state law claims but not on the federal claims for prospective relief; (3) Plaintiff has failed to state a free speech claim cognizable under the First Amendment; (4) Plaintiff has failed to state a procedural due process claim under the Fourteenth Amendment, or in the alternative, Defendants Sutton, Thomas and Mukoro in their official capacities are entitled to qualified immunity on this claim; and (5) the remaining state law claims against Defendants Sutton, Thomas and Mukoro in their individual capacity should be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

For the reasons set forth in this opinion:

IT IS THEREFORE ORDERED that the Motion of the Defendants, Mississippi Valley State University; Dr. William W. Sutton, individually and in his official capacity as President; Dr. W.E. Thomas, individually and in his official capacity as Vice-president for Academic Affairs; and Dr. Saliba Mukoro, individually and in his official capacity as Department Head of the Criminal Justice/Social Work Department, to Dismiss, or in the Alternative, Motion for Summary Judgment is hereby granted in part.

IT IS FURTHER ORDERED that the Cross–Motion of the Plaintiff Rosetta Harris for Partial Summary Judgment on the Procedural Due Process Claim is hereby denied.

IT IS FURTHER ORDERED that Plaintiff's remaining state law causes of action are dismissed without prejudice.

SO ORDERED.

### *FINAL JUDGMENT*

In accordance with the Opinion and Order entered this day, granting in part the Motion of the Defendants, Mississippi Valley State University; Dr. William W. Sutton, individu-

---

21. As discussed above, the Defendants complied with the minimal requirements of due process.

22. The Court assumes, without deciding, that the contours Harris's property interest in the noneconomic benefits of her administrative position were clearly established in 1994.

ally and in his official capacity as President; Dr. W.E. Thomas, individually and in his official capacity as Vice-president for Academic Affairs; and Dr. Saliba Mukoro, individually and in his official capacity as Department Head of the Criminal Justice/Social Work Department, to Dismiss, or in the Alternative, for Summary Judgment, it is hereby ordered that Plaintiff's causes of action based upon federal and state law in the above styled cause against the Defendant Mississippi Valley State University are hereby dismissed with prejudice, that Plaintiff's state law causes of action against the Defendants Thomas, Sutton and Mukoro in their official capacity are hereby dismissed with prejudice and that Plaintiff's federal claims against Defendants Thomas, Sutton and Mukoro in their official capacities are hereby dismissed with prejudice. It is further ordered that Plaintiff's state law claims against Sutton, Thomas and Mukoro are dismissed without prejudice.

SO ORDERED.