United States Court of Appeals,

Fifth Circuit.

No. 94-40380.

Jihaad A.M.E. SAAHIR, f/k/a Jehad Abdullah Shabazz, Plaintiff-Appellee,

v.

W.J. ESTELLE, Jr., Director, Texas Department of Criminal Justice, Institutional Division, et al., Defendants-Appellants.

March 20, 1995.

Appeal from the United States District Court for the Eastern District of Texas.

Before KING, GARWOOD and BENAVIDES, Circuit Judges.

PER CURIAM:

Officials of the State of Texas appeal an order enforcing a settlement agreement previously entered in an action brought under 42 U.S.C. § 1983. Finding that the district court lacked subject matter jurisdiction because of the operation of the immunity afforded a State under the Eleventh Amendment of the United States Constitution, we reverse.

## FACTS AND PROCEDURAL HISTORY

Jihaad A.M.E. Saahir ("Saahir"), formerly known as Jehad Abdullah Shabazz, a/k/a James Loggins, filed a motion for civil contempt against W.J. Estelle and several others (collectively "defendants") seeking enforcement of a settlement agreement entered into between Saahir and the defendants in a civil rights action previously filed by Saahir. In the previous lawsuit filed under 42 U.S.C. § 1983, Saahir sued W.J. Estelle, then director of the Texas Department of Corrections ("TDC") (now known as the Texas

Department of Criminal Justice) and various other TDC employees, alleging a violation of his First Amendment right to practice his religion because the defendants refused to recognize his Islamic name and refused to allow him to have a cassette-tape player and religious tapes to learn the Arabic language.

Saahir and the defendants entered into a settlement agreement in which the defendants agreed to allow Saahir to own, use, and possess a cassette-tape player and tapes for listening purposes only. The agreement included the following language: "The plaintiff shall order the tapes he desires, through the Texas Department of Corrections' Islamic Chaplain, who will facilitate and administer the order and delivery of the tapes to plaintiff." The district court entered a consent decree approving and incorporating the settlement agreement and dismissed the case. In the present lawsuit, Saahir filed a motion for civil contempt against the defendants, alleging that they violated the settlement agreement by confiscating 39 of his non-religious tapes. He alleged that the settlement agreement did not purport to limit his possession of tapes to religious tapes only. The defendants admitted that 35 non-religious tapes were confiscated. They asserted that the clear spirit of the settlement agreement was to allow Saahir to listen to religious tapes. The defendants also questioned the district court's jurisdiction over Saahir's motion for contempt, noting that there was no indication that the court intended to maintain continuing jurisdiction over the lawsuit. The district court granted Saahir's motion for contempt. The court

2

held that the terms of the settlement agreement were not limited to religious tapes and that the defendants should return the tapes or reimburse Saahir.  The defendants appeal.

LAW AND ARGUMENT

The defendants argue that the district court lacked subject matter jurisdiction to order them to conform their conduct to the settlement agreement because of their Eleventh Amendment immunity. They cite *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), and *Lelsz v. Kavanagh,* 807 F.2d 1243 (5th Cir.), *cert. dismissed,* 483 U.S. 1057, 108 S.Ct. 44, 97 L.Ed.2d 821 (1987), as authority for their argument that the district court did not have jurisdiction to enforce the settlement agreement beyond the extent required to protect Saahir's constitutional rights.

The Eleventh Amendment generally provides immunity to a State against suits in federal court by a citizen of the State against the State or a state agency or department. *Pennhurst,* 465 U.S. at 97-99, 104 S.Ct. at 906-07.  When only state officials have been sued, the suit is barred if "the [S]tate is the real, substantial party in interest."  *Id.* at 101, 104 S.Ct. at 908.  The Eleventh Amendment is an explicit jurisdictional limitation on the judicial power of the federal courts.  *Id.* at 119-21, 104 S.Ct. at 918-19. The Supreme Court carved out an exception to Eleventh Amendment immunity in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which held that acts by state officials contrary to federal law cannot have been authorized by the State and that suits

3

seeking to enjoin such acts are not suits against the State, *id.* at 160, 28 S.Ct. at 454. Thus, a suit challenging the constitutionality of a state official's action is not one against the State and is not barred by the Eleventh Amendment. *Pennhurst,* 465 U.S. at 102-03, 104 S.Ct. at 909.

In *Pennhurst,* the Supreme Court held that the federal courts did not have jurisdiction to order state officials to conform their conduct to state law. *Id.* at 124-25, 104 S.Ct. at 921. In *Lelsz,* the Fifth Circuit applied *Pennhurst,* holding that the district court lacked jurisdiction to enforce a consent decree against the State to the extent that the relief ordered in the decree was based on state law. *Lelsz,* 807 F.2d at 1246-47. We stated that the court did not have jurisdiction to enforce the consent decree beyond the guarantees contained in the Constitution because the only legitimate basis for federal court intervention consistent with the Eleventh Amendment was the vindication of federal rights. *Id.* at 1252.

Here, enforcing the provision that allows Saahir the non-religious tapes would not require the federal court to enforce state law against the State, as there is no state law giving prisoners the right to listen to musical tapes. Thus, *Pennhurst* 's central concern of having "a federal court instruct[ ] state officials on how to conform their conduct to state law," *Pennhurst,* 465 U.S. at 106, 104 S.Ct. at 911, is not implicated here. Nonetheless, enforcing the provision would not be required by any federal or constitutional law, as we fail to discern any First

4

Amendment protections except as to the *religious* tapes. Because "the only legitimate basis for federal court intervention, consistent with the Eleventh Amendment is the vindication of federal rights," *Lelsz,* 807 F.2d at 1252, the federal courts have no jurisdiction to enforce the provision as it relates to the non-religious tapes. Although the State of Texas has evidently not legislated on this particular issue, whether a prisoner has a right to listen to musical tapes is an issue that falls in the area of state governance and not that of the federal government. "If a federal court remedy unfounded in federal law intrudes into the governance of matters otherwise presided over by the states, no federal right has been vindicated." *Id.*

Saahir responds by arguing that the consent decree is based on federal law. Saahir's complaint did not claim to have any basis in state law, but rested on 42 U.S.C. § 1983. According to Saahir, the defendants agreed to settle these *federal* claims against them by agreeing to allow Saahir any musical tape he desires. Saahir argues that this is a vindication of a federal right because it has been given to Saahir in exchange for his dropping of a suit based on a federal right. In essence, it was one of the factors that led to the terms of the agreement, and Saahir claims to have relinquished some of his demands and damages in exchange for this factor.[1]

---

[1]A similar argument was adopted in *Ibarra v. Texas Employment Comm'n,* 823 F.2d 873 (5th Cir.1987), where we did not preclude the district court from approving a consent decree in which Texas state law was interpreted because the plaintiffs brought suit under 42 U.S.C. § 1983, *id.* at 877 (we reversed the

What the defendants agreed to give as a remedy, however, does not have any effect on the jurisdictional limits of a federal court. Although "a federal court is not necessarily barred from entering a consent decree merely because the decree provides broader relief than the court could have awarded after a trial," *Local Number 93, Int'l Ass'n of Firefighters v. City of Cleveland,* 478 U.S. 501, 525, 106 S.Ct. 3063, 3077, 92 L.Ed.2d 405 (1986), the federal court "must fall back on its inherent jurisdiction" when it "issue[s] its own, different order enforcing ... the decree," *Lelsz,* 807 F.2d at 1252. Further, the possibility that Saahir relinquished other damages in exchange for the non-religious tapes is irrelevant. Although federal courts may award an injunction governing a state official's future conduct, they may not award retroactive monetary relief. *Edelman v. Jordan,* 415 U.S. 651, 666-67, 94 S.Ct. 1347, 1357-58, 39 L.Ed.2d 662 (1974).

Next, Saahir contends that the settlement agreement did not contain any rules or guidelines on what tapes would be considered religious. Because the settlement agreement did not give the defendants the authority to determine what tapes were religious, but instead gave that authority to Saahir, Saahir should be given reasonable discretion on this issue. Saahir, however, never claims that these tapes were necessary for his religious beliefs.

approval on other grounds, *id.* at 879). However, *Ibarra* is readily distinguishable. The particular state statute subject to the decree's interpretation expressly incorporated a federal statute, and "any change in the [federal] standard is automatically incorporated into Texas law." *Id.* Thus, the ultimate basis of the decree was an interpretation of federal law.

Instead, he rests his appeal on the idea that the defendants have agreed to allow him his non-religious tapes. Further, just as the scope of the consent decree does not enlarge the court's jurisdiction, the way the parties agreed to implement the remedy contained in the consent decree likewise cannot affect the jurisdictional bounds of the federal courts.

Finally, Saahir argues that the defendants waived their Eleventh Amendment immunity when they entered the settlement agreement. It has been consistently held that a State may consent to suit against it in federal court. *Clark v. Barnard,* 108 U.S. 436, 447, 2 S.Ct. 878, 882-83, 27 L.Ed. 780 (1883). According to Saahir, by entering the consent decree, the defendants consented to the district court's jurisdiction to rule on this issue. Saahir states that the defendants never attempted to clarify the language in the settlement agreement when they knew that Saahir would be ordering non-religious tapes. Saahir claims that such facts further bolster the contention that the defendants consented to the court's jurisdiction. For example, Saahir points to the fact that a non-religious tape was one of the tapes denied to Saahir which prompted him to file his original suit. Saahir also states that, at a hearing before the settlement, the parties discussed who would "search" the non-religious tapes. Finally, when his first Arabic tapes were lost by the TDC, a non-religious tape was returned to Saahir. Saahir concludes by arguing that he had ordered non-religious tapes for the past eight years without any problems before now.

The State's consent, however, must be unequivocally expressed. *Edelman,* 415 U.S. at 673, 94 S.Ct. at 1360-61. Here, the defendants did not expressly waive their immunity in the settlement agreement. Nor can we find an express consent in the proceedings on Saahir's motion. Indeed, the defendants argued that the settlement agreement did not cover non-religious tapes, which suggests that the defendants did not unequivocally consent to a district court ruling with respect to a non-federally protected right. Although Saahir presents evidence suggesting that the defendants had knowledge of non-religious tapes being present, he has not proved that the defendants believed that the consent decree covered non-religious tapes. Because "[w]aiver of a state's sovereign immunity, like waiver of any constitutional right, is strictly construed in favor of the holder of the right," *Lelsz,* 807 F.2d at 1253, and because "[c]onstructive consent is not a doctrine commonly associated with the surrender of constitutional rights, and we see no place for it here," *Edelman,* 415 U.S. at 673, 94 S.Ct. at 1360, we hold that there has not been a sufficient showing that the defendants waived their Eleventh Amendment immunity.

CONCLUSION

Because the district court had no jurisdiction to enforce the instant provision of the consent decree, we REVERSE the district court's granting of the motion for civil contempt.[2]

---

[2]Saahir's brief also points to the fact that his Amended Complaint in the settled lawsuit states a Fourteenth Amendment claim. Saahir is apparently arguing that his rights to the non-religious tapes are guaranteed by the Fourteenth Amendment. In his Amended Complaint, however, Saahir never requests

8

non-religious tapes nor does he claim that the defendants had confiscated or withheld such tapes.