96 F.3d 955
 Paul KOMYATTI, Jr., Aaron E. Isby and Roosevelt Williams,
Plaintiffs-Appellants,
v.
Evan BAYH, In his individual and official capacity as
Governor of the State of Indiana, James E. Aiken, In his
individual and official capacity as Commissioner of the
Indiana Department of Corrections, Norman G. Owens, In his
individual and official capacity as Director of the
Classification Division of the Indiana Department of
Corrections, et al., Defendants-Appellees.
 No. 95-3281.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 15, 1996.
Decided Sept. 20, 1996.
 
 Hamid R. Kashani (argued), Indianapolis, IN, Franklin A. Morse, II, Indiana Civil Liberties Union, South Bend, IN, Richard A. Waples, Indianapolis, IN, for Plaintiffs-Appellants.
 Wayne E. Uhl (argued), Office of the Attorney General, Indianapolis, IN, for Defendants-Appellees.
 Before COFFEY, RIPPLE and DIANE P. WOOD, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 In 1992, a number of prisoners incarcerated at the Maximum Control Complex ("MCC") in Westville, Indiana filed a class action against state officials. Alleging a number of federal constitutional violations, the prisoners challenged their assignment to, and the conditions of confinement at, the MCC. The parties negotiated an agreed entry, which was ultimately approved by the district court. The agreed entry, a consent decree, included a provision which, by incorporating an Indiana statutory provision, accords prisoners charged with serious disciplinary offenses certain procedural protections, including the availability of a "lay advocate," during the disciplinary process. The procedural protections provided for in the agreed entry exceed those required by the Constitution of the United States. In 1994, the prisoners filed a motion to hold the state officials in contempt for violating several provisions of the consent decree. The district court, however, refused to enforce the provisions of the consent decree beyond those provisions mandated explicitly by the Constitution of the United States. The plaintiffs appeal the district court's denial of their contempt motion. For the reasons set forth in the following opinion, we reverse the judgment of the district court and remand for further proceedings.
 
 
 2
 Before proceeding further, however, we add a note of caution. After this case was submitted, the President approved the Prison Litigation Reform Act of 1996. See Pub. L. No. 104-134, Title VIII, 110 Stat. 1321 (1996) (codified principally at 18 U.S.C. § 3626). This Act, the pertinent provisions of which are effective immediately, see Prison Litigation Reform Act of 1996, § 802(b)(1), 18 U.S.C. § 3626 note, makes substantial changes in the fashioning and enforcement of consent decrees dealing with prison conditions. Neither the state nor the plaintiffs has suggested to this court the impact of this statute upon this appeal from a denial of a motion for contempt based on noncompliance before the enactment of this legislation. We note that, in their memorandum in support of the motion for contempt, the plaintiffs state the possibility of sanctions to compensate them for losses incurred as a result of the defendants' non-compliance with the consent decree. The plaintiffs are therefore seeking more than prospective compliance with the terms of the consent decree. Because we believe that the district court misapprehended our precedents on the issues presented to us, we cannot permit its judgment to stand. We emphasize that, on remand, the district court, if requested to alter the consent decree previously entered by the court, must take into account the provisions of this new statute. Sasnett v. Sullivan, 91 F.3d 1018, 1023 (7th Cir.1996). We express no opinion on what changes, if any, the new statute might require in the consent decree. We leave that issue in the first instance for the district court.
 
 
 3
 * BACKGROUND
 
 
 4
 In May 1992, a class of prisoners commenced this action against the Governor of Indiana and several officials of the Indiana Department of Corrections ("DOC"). The prisoners' action, brought under 42 U.S.C. § 1983 and Indiana law, challenged their assignment to, and the conditions of confinement at, the MCC.[1] The complaint alleged a number of federal constitutional violations. Relevant to this appeal, however, is the prisoners' challenge to the manner in which prison disciplinary proceedings are conducted.
 
 
 5
 The prisoners' claims for injunctive relief were resolved when the parties proposed, and the district court approved, the agreed entry. Paragraph IX(1) of the agreed entry provides:
 
 
 6
 All discipline, including Conduct Adjustment Board hearings, shall be consistent with Ind.Code 11-11-5-1 et seq. (attached). This does not entitle prisoners to utilize the Court's contempt powers to challenge [Conduct Adjustment Board] convictions on a case by case basis. The contempt power shall be available to enforce this provision on a class-wide basis.
 
 
 7
 R.112, Agreed Entry at para. IX(1). The Indiana statute referred to in this paragraph, Indiana Code § 11-11-5-1 et seq., accords certain procedural protections to prisoners charged with disciplinary offenses. It is undisputed that many of these procedural protections, including the availability of "lay advocates" for prisoners charged with serious offenses, exceed, at least when viewed outside the context of the consent decree, the requirements of the Due Process Clause of the Fourteenth Amendment. One of the provisions of the state statute, Indiana Code § 11-115-5(a)(7), provides that prisoners facing disciplinary hearings are entitled to
 
 
 8
 have advice and representation by a lay advocate of his choice, if that lay advocate is available in the institution at the time of the hearing, in those hearings based upon a charge of institutional misconduct when the department determines he lacks the competency to understand the issues involved or to participate in the hearing, or when the punishment [exceeds certain levels].
 
 
 9
 Indiana Code § 11-11-5-5(a)(7). The availability of lay advocates under this section exceeds the requirements of the Due Process Clause. See Wolff v. McDonnell, 418 U.S. 539, 569-70, 94 S.Ct. 2963, 2981-82, 41 L.Ed.2d 935 (1974) (holding that an advocate must be provided only when the prisoner is illiterate or where the issues are so complex that the prisoner is unable to defend against the charges); Miller v. Duckworth, 963 F.2d 1002, 1004 (7th Cir.1992).
 
 
 10
 In September 1994, the prisoners filed a motion in the district court to hold the defendants in contempt. The prisoners alleged that the defendants had failed to comply with certain provisions of the agreed entry, including paragraph IX(1). Specifically, the plaintiffs' motion alleged that: (1) DOC officials had denied prisoners the lay advocate of their choice, as required by Indiana Code § 11-11-5-5(a)(7); and (2) the lay advocates provided by the prison had not performed any of the functions traditionally expected of an advocate. The district court referred the contempt motion to a magistrate judge for a report and recommendation.
 
 
 11
 In his report and recommendation, the magistrate judge took the view that the district court lacks jurisdiction to enforce paragraph IX(1) of the agreed entry on the ground that, under the Eleventh Amendment, a federal court may not enjoin state officials to conform their conduct to state law. Relying on the Fifth Circuit's decision in Saahir v. Estelle, 47 F.3d 758 (5th Cir.1995) and this court's decision in Evans v. City of Chicago, 10 F.3d 474 (7th Cir.1993) (en banc), cert. denied, --- U.S. ----, 114 S.Ct. 1831, 128 L.Ed.2d 460 (1994), the magistrate judge reasoned that the Eleventh Amendment's jurisdictional bar remains in place--even when state officials agree to follow state law in a federal consent decree. The prisoners have no right to lay advocates under federal law, the magistrate judge concluded, and, even though the defendants adopted Indiana's lay advocate provisions as part of the remedy to the plaintiffs' section 1983 claim, "[w]hat the defendants agreed to give as a remedy ... does not have any effect on the jurisdictional limits of a federal court." Saahir, 47 F.3d at 761; see Lelsz v. Kavanagh, 807 F.2d 1243, 1252-53 (5th Cir.), cert. dismissed, 483 U.S. 1057, 108 S.Ct. 44, 97 L.Ed.2d 821 (1987). The district court adopted, without exception, the view expressed in the report and recommendation.
 
 II
 DISCUSSION
 
 12
 On appeal, the plaintiffs submit that the bar of the Eleventh Amendment is not applicable because, even though paragraph IX(1) of the agreed entry makes explicit reference to an Indiana Code provision, the parties did not intend to incorporate "state law" as the remedy for the plaintiffs' claim that prison disciplinary hearings are conducted in a constitutionally deficient manner. Rather, the plaintiffs assert, the DOC officials agreed to follow procedures exactly similar to the provisions found at Indiana Code § 11-11-5-1 et seq. They submit that the parties agreed to adopt, by reference only, terms that coincide with those found in the Indiana statute as it existed in 1993, and that the reference to the Indiana Code merely serves as a shorthand for those terms.[2] In the plaintiffs' view, the fact that these provisions may exceed federal constitutional requirements is not fatal to the agreed entry; consent decrees may, and often do, exceed constitutional minima.
 
 
 13
 The defendants, on the other hand, renew their position that federal court enforcement of paragraph IX(1)-with its explicit reference to the Indiana Code--is tantamount to requiring state officials to comply with state law. Although they do not question the power of a federal court to enforce provisions of consent decrees which go beyond constitutional minima, see, e.g., Kindred v. Duckworth, 9 F.3d 638, 641-42 (7th Cir.1993), the defendants assert that a different situation is presented when, as in this case, a federal consent decree directly incorporates the terms of a state statute. Here, the Indiana statute referred to in the agreed entry provides prisoners with a procedural protection--their choice of an attorney-like "lay advocate"--that exceeds constitutional requirements. The defendants submit that, under these circumstances, there is no federal interest in enforcing the provisions of the state statute. See Evans, 10 F.3d at 479 ("[T]he court must ensure that there is a substantial federal claim, not only when the decree is entered but also when it is enforced, and that the obligations imposed by the decree rest on this rule of federal law rather than the bare consent of the officeholder.").
 
 
 14
 The submissions of the parties raise three related issues. The first issue, now settled by the Supreme Court, is whether a consent decree stemming from a constitutional grievance may impose upon the parties rights and obligations greater than those required directly by the Constitution. The second is whether, in formulating a consent decree, a federal district court may adopt by reference and incorporate a state statute as the standard to which the defendants must conform their conduct. Finally, we must confront, at least in a preliminary fashion, the question of whether, consistent with the Eleventh Amendment, an aggrieved party may enforce, by way of a contempt proceeding, the provisions of a consent decree that impose requirements beyond those required by the Constitution of the United States.
 
 A.
 
 15
 It is well established that consent decrees may embody conditions beyond those imposed directly by the Constitution itself. See Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 389, 112 S.Ct. 748, 762-63, 116 L.Ed.2d 867 (1992); Kindred v. Duckworth, 9 F.3d 638, 641 (7th Cir.1993); see also Langton v. Johnston, 928 F.2d 1206, 1217-18 (1st Cir.1991). The condition must, of course, be one that is related to elimination of the condition that is alleged to offend the Constitution. Rufo, 502 U.S. at 389, 112 S.Ct. at 762-63; Milliken v. Bradley, 418 U.S. 717, 738, 94 S.Ct. 3112, 3124, 41 L.Ed.2d 1069 (1974).[3] In Rufo, the Supreme Court explained:
 
 
 16
 [W]e have no doubt that, to "save themselves the time, expense, and inevitable risk of litigation," petitioners could settle the dispute over the proper remedy for the constitutional violations that had been found by undertaking to do more than the Constitution itself requires....
 
 
 17
 502 U.S. at 389, 112 S.Ct. at 762 (citation omitted). Parties often are unsure of the current posture of the law and therefore are willing to compromise their positions. Kindred, 9 F.3d at 641. Parties also stipulate to particular conditions that make it easier to monitor the decree and secure enforcement. Indeed, it is a rare case when a consent decree requires only the bare minimum required by the Constitution; "almost any affirmative decree beyond a directive to obey the Constitution necessarily" contains provisions requiring activity beyond constitutional minima. Rufo, 502 U.S. at 389, 112 S.Ct. at 762-63; see Kindred, 9 F.3d at 641.
 
 B.
 
 18
 We next examine the question of whether, consistent with the Eleventh Amendment, a federal court may, in the course of formulating and approving a consent decree, incorporate a state statute as the standard to which a state defendant must conform his or her conduct. The State of Indiana does not question the power of a federal court to enter and enforce a consent decree whose requirements go beyond constitutional minima. It submits, however, that a different situation is presented when, as in this case, a federal consent decree directly incorporates a state statutory provision. In the defendants' view, enforcing such a provision through the contempt power would be tantamount to ordering state officials to comply with an Indiana statute, in violation of the Eleventh Amendment.
 
 
 19
 It is well established that the Eleventh Amendment prohibits a federal court from ordering state officials to conform their conduct to state law.[4] See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); see, e.g., Mitchell v. Clayton, 995 F.2d 772, 775 (7th Cir.1993); Lett v. Magnant, 965 F.2d 251, 255 (7th Cir.1992); Bates v. Johnson, 901 F.2d 1424, 1428 (7th Cir.1990). In Pennhurst, the Supreme Court reasoned that such relief is unnecessary to vindicate the supreme authority of federal law and that it contravenes the principles of federalism underlying the Eleventh Amendment. 465 U.S. at 105-06, 104 S.Ct. at 910-11. Clearly, then, a federal consent decree cannot rely on state law as the "foundation for relief." See NBD Bank, N.A. v. Bennett, 67 F.3d 629, 634 (7th Cir.1995) ("To the extent that NBD relies on state law as the foundation for relief against the State of Indiana, the eleventh amendment bars the way.") (citing Pennhurst).
 
 
 20
 However, a substantially different situation is presented when the parties to a federal lawsuit elect to settle a live federal constitutional claim by agreeing that their subsequent conduct will be measured against a standard articulated in a state statute. A subsequent motion to enforce such a decree is not a "federal suit against state officials on the basis of state law." Pennhurst, 465 U.S. at 117, 104 S.Ct. at 917. It is not, as the State of Indiana suggests, tantamount to requiring state officials to conform their conduct to state law. Rather, the remedy embodied in a consent decree "spring[s] from and serve[s] to resolve" the underlying federal constitutional violation. Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 525, 106 S.Ct. 3063, 3077, 92 L.Ed.2d 405 (1986). Therefore, a provision in a validly-entered consent decree is an obligation on state officials to conform their conduct to federal law. Provided that the inclusion of the state statute into the consent decree is designed to remedy the federal constitutional violation alleged in the underlying complaint, therefore, the Eleventh Amendment does not preclude parties to a lawsuit alleging a federal constitutional violation from incorporating the standards found in a state statute into their agreed settlement.
 
 
 21
 Articulating a standard of conduct in terms of compliance with a state statute will often better serve the concerns of federalism than the formulation of a standard that is purely the product of the federal court. State statutory law provides a convenient, ready-made body of rules, regulations and procedures that may, in a proper case, provide an appropriate remedy to the federal constitutional violation alleged in the underlying complaint. Incorporation of a state statute yields an additional benefit by minimizing the intrusiveness of the federal consent decree into state affairs. It will often permit the harmonization of the federal consent decree with the legitimate policy choices of the state government. State officials, whose conduct already is subject to the requirements of state law, are already familiar with the requirements of the state statute. Incorporation of a state statute into a federal consent decree thus obviates the need for state officials to learn and to conform their conduct to two separate standards.
 
 
 22
 Thus, a consent decree resolving a particular lawsuit may incorporate the terms of a state statute. Whether the standard embodied in a federal consent decree is articulated in terms of a state statute or not, however, the standards that govern the district court's authority to enter a consent decree are the same. In Firefighters, the Supreme Court articulated those standards. The consent decree proposed by the parties must (1) "spring from and serve to resolve a dispute within the court's subject matter jurisdiction"; (2) "com[e] within the general scope of the case made by the pleadings"; and (3) "further the objectives of the law upon which the complaint was based." Id. at 525, 106 S.Ct. at 3077 (citations omitted).
 
 
 23
 Applying these principles to the consent decree in the case before us, it appears, on this record,[5] that the parties did not intend to incorporate state law, qua state law, into paragraph IX(1) of the agreed entry. The prisoners' underlying complaint alleged a federal constitutional violation within the subject matter of the district court--that prison disciplinary proceedings are conducted in a constitutionally deficient manner. In order to settle that claim, the parties elected to adopt, by reference, the ready-made body of procedural protections found at Indiana Code § 11-11-5-1 et seq. Indeed, paragraph IX(1) of the agreed entry does not provide that future changes in the state statute would be incorporated into the agreement. Provided that the procedural protections referred to in this paragraph satisfy the requirements articulated by the Supreme Court in Firefighters, therefore, the fact that the parties have chosen to express the remedy in terms of a state statute does not, standing alone, deprive the district court of jurisdiction to enforce the decree.
 
 C.
 
 24
 The defendants suggest, albeit somewhat obliquely, that the Eleventh Amendment prevents a district court from enforcing, in a contempt proceeding, consent decree provisions which do more than impose directly the minimum requirements of the Constitution.
 
 
 25
 This issue is not a new one to this court. We confronted it in Kindred v. Duckworth, 9 F.3d 638 (7th Cir.1993). Kindred involved a contempt proceeding brought by an inmate at the Pendleton Reformatory. A new policy, instituted by the Superintendent, required inmates to read all incoming legal mail in the presence of Reformatory staff. Inmate James Kindred responded to the new policy by asking the district court to hold the Superintendent in contempt and to enforce a previously-entered consent decree that contained a provision concerning the opening of confidential correspondence. The district court denied enforcement of the consent decree, noting that
 
 
 26
 [i]t would be aberrant for the plaintiff class to contend or for this Court to rule that the State of Indiana was compelled by a federal decree to accord its prisoners treatment which is not compelled by the constitution, for on what grounds could such a decree possibly be based? The movants do not, here at least, challenge the new policy on constitutional grounds, hence their motion for a finding of contempt and other relief must in all respects be denied.
 
 
 27
 Kindred, 9 F.3d at 641 (quoting Bradberry v. Duckworth, No. IP 76-459-C, Entry Denying Motion for Contempt Order and Other Relief at 2-3 (S.D.Ind. Oct. 27, 1992)). This court reversed, concluding that the challenged policy was not compatible with the previously-entered consent decree. The court's opinion, when read in its entirety, makes clear that we based our decision on a determination that the challenged policy violated the consent decree--and not on the ground that the new mail policy was constitutionally infirm. See id. at 642-43 & nn. 6-7. Indeed, we noted that the new mail policy at the Reformatory had withstood constitutional scrutiny in a case brought by another prisoner.[6] See Kindred, 9 F.3d at 640. Although the court remanded the case for a determination of whether the consent decree had been superseded by intervening legislation, our decision in Kindred demonstrates our willingness to enforce the terms of a consent decree as long as they are tailored to rectify the federal constitutional violation.[7] This approach is compatible with that of other circuits. In Kozlowski v. Coughlin, 871 F.2d 241 (2d Cir.1989), the Commissioner of the New York State Department of Corrections had taken the position that he possessed the authority to alter, without court approval, those portions of a previously-entered consent decree that exceed constitutional guarantees. In the Commissioner's view, the Eleventh Amendment barred the federal courts from exercising jurisdiction over those terms. Rejecting this position, the Second Circuit held that, because the determination of how to remedy an underlying constitutional violation was within the court's subject matter jurisdiction, the subsequent enforcement of a consent decree, which "springs from" that determination, is proper under the Eleventh Amendment. See id. at 244-45 (quoting Firefighters); see also Duran v. Carruthers, 885 F.2d 1485, 1491 (10th Cir.1989) (holding that "a federal court is not necessarily barred from entering a consent decree merely because the decree provides broader relief than the court could have awarded after trial"), cert. denied, 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990).
 
 
 28
 There may indeed be instances when significant factual or legal changes[8] make it inequitable for a court to continue to enforce a settlement decree. When such circumstances occur, the parties may, as the court emphasized in Kindred, seek an alteration in the terms of the consent decree pursuant to Federal Rule of Civil Procedure 60(b)(5). See 9 F.3d at 644. Indeed, when the parties can no longer identify an underlying dispute grounded reasonably in federal law, vacation of the decree may well be in order.[9]
 
 
 29
 This court confronted such a situation in Evans v. City of Chicago, 10 F.3d 474 (7th Cir.1993) (en banc), cert. denied, --- U.S. ----, 114 S.Ct. 1831, 128 L.Ed.2d 460 (1994). In Evans, a class of judgment debtors challenged the City of Chicago's practice of delaying payment of certain judgments that had been entered against it. The district court, ruling that the challenged practice violated the Due Process and Equal Protection Clauses of the Constitution, entered summary judgment in favor of the plaintiffs. A panel of this court affirmed the portion of the judgment that rested on the Equal Protection Clause.[10] The parties then entered into a consent decree providing appropriate relief from the challenged practice but, after a dispute arose as to the plaintiffs' entitlement to monetary damages, a second panel of this court reversed the earlier panel's decision on the plaintiffs' equal protection theory.[11] On remand, the district court modified--but refused to vacate--the consent decree. The district court reasoned that the consent decree also had settled the plaintiffs' due process claim, which had not been addressed in the second panel's decision. Sitting en banc, this court reversed the district court's refusal to vacate the consent decree. Evans, 10 F.3d at 482-83. A majority of the court took the view that the plaintiffs had failed to state a claim under the Due Process Clause. Judge Easterbrook, writing for the plurality, indicated that the consent decree had to be set aside because a district court may not require a unit of state or local government to abide by a consent decree that does not serve any federal interest. The plurality opinion explained:
 
 
 30
 [T]he [district] court must ensure that there is a substantial federal claim, not only when the decree is entered but also when it is enforced, and that the obligations imposed by the decree rest on this rule of federal law rather than the bare consent of the officeholder.
 
 
 31
 * * * * * *
 
 
 32
 [E]ntry and continued enforcement of a consent decree regulating the operation of a governmental body depend on the existence of a substantial claim under federal law. Unless there is such a claim, the consent decree is no more than a contract, whose enforcement cannot be supported by the diversity jurisdiction and that has in court no more force than it would have outside of court.
 
 
 33
 Id. at 479, 480. Although the consent decree was valid when entered, this court ordered it vacated after it concluded that the plaintiffs' underlying claims were not supported by the United States Constitution. In the absence of a live federal claim, therefore, the consent decree in Evans no longer served any federal purpose. See Balark v. City of Chicago, 81 F.3d 658 (7th Cir.1996), petition for cert. filed, 65 U.S.L.W. 3110 (U.S. July 31, 1996) (No. 96-167).[12]
 
 
 34
 One other circuit has suggested that there may be cases in which a party will be excused from abiding by the terms of an outstanding consent decree because there is no underlying federal interest undergirding the provision that has been violated. See Saahir v. Estelle, 47 F.3d 758 (5th Cir.1995).[13] However, we believe that the court expressed the usual course in Kindred when it wrote that a "continuing respect for the valid decrees of a court commands that they be obeyed until changed." 9 F.3d at 644. Such an approach is certainly compatible with the traditional approach of our law. See Pasadena City Bd. of Educ. v. Spangler, 427 U.S. 424, 439-40, 96 S.Ct. 2697, 2706-07, 49 L.Ed.2d 599 (1976); Walker v. City of Birmingham, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967). Such an approach is also, we are pleased to say, most compatible with the traditions of our people and their commitment to a rule of law.
 
 
 35
 In the case before us, the district court took the view that, because a particular provision in the consent decree could not be characterized as specifically mandated by the Constitution, the provision was unenforceable as part of the consent decree and therefore could not serve as the basis for contempt. The district court erred in several respects. First, it should not have held that the proper course for the state officials was to ignore the provision with impunity. The appropriate course, Kindred teaches, would have been to seek an alteration of the decree from the district court. Secondly, the district court assumed that the court could not retain, and enforce through its contempt power, any provision of the consent decree that could not be characterized as required by the Constitution itself. In this respect, it failed to recognize that a federal consent decree can contain a provision not explicitly required by the Constitution as long as the criteria set forth in Firefighters are met. The mere congruence of the selected terms with a provision of state law does not, standing alone, render the consent decree beyond the authority of the federal court. Rather, the selection of that term must be measured against the criteria in Firefighters. "If a federal court can validly enter a consent decree, it can surely enforce that decree." Kozlowski, 871 F.2d at 244. If intervening legal or factual changes make enforcement inequitable, Rule 60 provides an effective remedy. See Rufo, 502 U.S. at 389-90, 112 S.Ct. at 762-63.[14]
 
 
 36
 If the state defendants should decide to seek alteration of the consent decree, the district court will have the opportunity to undertake the reexamination envisioned by Kindred. If it determines, applying the criteria of Rufo, Firefighters and the Prison Litigation Reform Act, that the provision is no longer a valid component of the consent decree, the court may amend the decree to relieve the state officials from a provision that no longer serves any valid federal purpose.
 
 Conclusion
 
 37
 Because this path was not followed in the case before us, the judgment of the district court is reversed and the case is remanded for proceedings consistent with this opinion.
 
 
 38
 REVERSED AND REMANDED.
 
 
 
 [1]
 The case originally was filed in the Marion Superior Court. The defendants removed the action to the United States District Court for the Southern District of Indiana. On July 7, 1992, the case was transferred to the Northern District of Indiana. The district court ordered the prisoners' state law claims remanded to state court
 
 
 [2]
 In support of this position, the plaintiffs point to the fact that a copy of Indiana Code § 11-11-5-1 et seq., as it existed in 1993, was attached to the agreed entry as an exhibit. Unlike other provisions in the agreed entry, moreover, paragraph IX(1) does not provide that future changes in the law would be incorporated into the agreement. Compare R.112, Agreed Entry at para. III(F)(5)-(6) (incorporating Indiana Code § 11-11-3-3 to -4 and prescribing that future revisions to state law will be incorporated into the agreed entry)
 
 
 [3]
 The reader is cautioned that this discussion does not take into account the explicit standards of section 802 of the Prison Litigation Reform Act of 1996. See 18 U.S.C. § 3626(a)(1)
 
 
 [4]
 The doctrine of Eleventh Amendment immunity, though often characterized as jurisdictional, does not function as a true jurisdictional bar. Unlike other forms of subject-matter jurisdiction, Eleventh Amendment immunity can, for example, be waived by consent. See Parden v. Terminal Ry., 377 U.S. 184, 192-93, 84 S.Ct. 1207, 1212-13, 12 L.Ed.2d 233 (1964), overruled on other grounds by Welch v. Texas Dep't of Highways & Pub. Transp., 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987). The Supreme Court has declared, moreover, that "we have never held that [the Eleventh Amendment] is jurisdictional in the sense that it must be raised and decided by this Court on its own motion." Patsy v. Board of Regents of Fla., 457 U.S. 496, 515 n. 19, 102 S.Ct. 2557, 2567 n. 19, 73 L.Ed.2d 172 (1982)
 
 
 [5]
 We have no occasion to determine whether this particular provision of the consent decree can be said to be "narrowly drawn, extend[ ] no further than necessary to correct the violation of the Federal right" or have "an adverse impact on public safety or the operation of a criminal justice system." These standards, embodied in section 802(a)(1) of the Prison Litigation Reform Act, are not properly before us on this appeal
 
 
 [6]
 The court also noted that statutory amendments had left inmates at other institutions (i.e., those not party to the consent decree) without a viable statutory or constitutional basis upon which to complain. Kindred, 9 F.3d at 643
 
 
 [7]
 See supra note 5
 
 
 [8]
 We already have noted that section 802 of the Prison Litigation Reform Act may provide such a ground
 
 
 [9]
 In Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992), the Supreme Court addressed the circumstances in which an intervening change in facts or law warrants the revision of a consent decree. Rejecting the proposition that every clarification in the law automatically opens the door for relitigation of the merits of every affected consent decree, the Court noted:
 To hold that a clarification in the law automatically opens the door for relitigation of the merits of every affected consent decree would undermine the finality of such agreements and could serve as a disincentive to negotiation of settlements in institutional reform litigation. The position urged by petitioners "would necessarily imply that the only legally enforceable obligation assumed by the state under the consent decree was that of ultimately achieving minimal constitutional prison standards.... Substantively, this would do violence to the obvious intention of the parties that the decretal obligations assumed by the state were not confined to meeting minimal constitutional requirements. Procedurally, it would make necessary, as this case illustrates, a constitutional decision every time an effort was made either to enforce or modify the decree by judicial action."
 Rufo, 502 U.S. at 389-90, 112 S.Ct. at 763 (quoting Plyler v. Evatt, 924 F.2d 1321, 1327 (4th Cir.1991)).
 
 
 [10]
 Evans v. City of Chicago, 689 F.2d 1286, 1299-1300 (7th Cir.1982)
 
 
 [11]
 Evans v. City of Chicago, 873 F.2d 1007, 1015-18 (7th Cir.1989), cert. denied, 495 U.S. 956, 110 S.Ct. 2560, 109 L.Ed.2d 742 (1990)
 
 
 [12]
 See also Lelsz v. Kavanagh, 807 F.2d 1243 (5th Cir.), cert. dismissed, 483 U.S. 1057, 108 S.Ct. 44, 97 L.Ed.2d 821 (1987)
 
 
 [13]
 In Saahir, a prisoner had entered into a settlement agreement with prison officials allowing him to own, use and possess a cassette tape player and tapes for listening purposes. The agreement provided that Saahir "shall order the tapes he desires, through the Texas Department of Corrections' Islamic Chaplain, who will facilitate and administer the order and delivery of tapes" to him. Saahir, 47 F.3d at 760. The district court in Saahir entered a consent decree approving and incorporating the settlement agreement and dismissed the case. Saahir later brought a motion for civil contempt against the defendants, alleging that they had violated the settlement agreement by confiscating thirty-nine of his non-religious tapes. The district court granted the motion and required the prison officials to return the tapes to Saahir or to reimburse him
 The Court of Appeals reversed. The Fifth Circuit held that the district court was without jurisdiction to entertain Saahir's contempt motion because it did not implicate any federal interest. According to Saahir, the defendants had agreed to settle his section 1983 claim by allowing him any musical tapes he desired. Saahir argued that this was a vindication of a federal right because it had been given to him in exchange for his dropping a suit based on federal law. The Fifth Circuit disagreed, explaining:
 What the defendants agreed to give as a remedy ... does not have any effect on the jurisdictional limits of a federal court. Although "a federal court is not necessarily barred from entering a consent decree merely because the decree provides broader relief than the court could have awarded after a trial," Local Number 93, Int'l Ass'n of Firefighters v. City of Cleveland, 478 U.S. 501, 525, 106 S.Ct. 3063, 3077, 92 L.Ed.2d 405 (1986), the federal court "must fall back on its inherent jurisdiction" when it "issue[s] its own, different order enforcing ... the decree," Lelsz, 807 F.2d at 1252.
 Saahir, 47 F.3d at 761 (parallel citations omitted).
 
 
 [14]
 "While a decision that clarifies the law will not, in and of itself, provide a basis for modifying a decree, it could constitute a change in circumstances that would support modification if the parties had based their agreement on a misunderstanding of the governing law." Rufo, 502 U.S. at 390, 112 S.Ct. at 763