# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-01184-SCT

*ROSETTA HARRIS*

*v.*

*MISSISSIPPI VALLEY STATE UNIVERSITY; THE*
*BOARD OF TRUSTEES OF STATE INSTITUTIONS*
*OF HIGHER LEARNING; DR. WILLIAM SUTTON;*
*DR. LESTER C. NEWMAN; DR. W.E. THOMAS; DR.*
*SALIBA MUKORO; DR. MOHAMMAD R. HOQUE;*
*VINCE VENTURINI; AND DR. ROY HUDSON*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/23/2002 |
| TRIAL JUDGE: | HON. RICHARD A. SMITH |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN M. MOONEY, JR. |
| ATTORNEYS FOR APPELLEE: | JAMES T. METZ |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 5/13/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### EN BANC.

### WALLER, PRESIDING JUSTICE, FOR THE COURT:

¶1.     Rosetta Harris sued her former employer, Mississippi Valley State University (MVSU), claiming breach of contract, wrongful termination, negligence, malicious prosecution, and intentional and/or negligent infliction of emotional distress. She later amended her complaint to add individual defendants and allege violations of 42 U.S.C. §§ 1981, 1985, 1986; 42 U.S.C. § 1983 violations of her First and Fourteenth Amendment rights, and breach of the implied covenant of good faith and fair dealing. The trial court

dismissed all of Harris' state law claims except her breach of contract claim for failure to give notice pursuant to the Mississippi Tort Claim Act (MTCA). See Miss. Code Ann. §§ 11-46-1 et seq. The trial court then granted summary judgment in favor of the defendants on the remainder of her claims. Harris appeals.

## FACTS

¶2.     In order to address Harris' appeal, it is necessary to develop the extensive history of proceedings between Harris and MVSU that culminated in her termination.[1]

¶3.     Rosetta Harris began her employment at MVSU in 1977 as an instructor in the Social Work Department. In 1994, she was granted tenure by the Tenure Committee at MVSU. She served as the program coordinator within the Criminal Justice/ Social Work department from August, 1994, to May, 1995.

¶4.     Following Harris' appointment as program coordinator, a dispute arose regarding the accreditation of the MVSU social work program. The program was accredited by the Council on Social Work Education (CSWE), which sets standards for the hiring of faculty members. Harris became concerned with the hiring by MVSU of Dr. Mohammad R. Hoque, who lacked a masters of social work degree and who had never practiced social work. Harris notified CSWE of Hoque's lack of credentials, and CSWE responded with an inquiry into MVSU's accreditation in late August and September of 1994. On October 28, 1994, Dr. William W. Sutton, then President of MVSU, notified Harris that "it is my decision to

---

[1]Harris previously brought suit in federal court over her removal as program coordinator. *Harris v. Miss. Valley State Univ.*, 899 F. Supp. 1561 (N.D. Miss. 1995) (*Harris I*). There, she alleged she was removed as program coordinator in violation of state law and also in violation of her First and Fourteenth Amendment rights. The court dismissed her federal claims with prejudice and her state law claims without prejudice. In the present case, Harris alleges she was removed as program director in violation of state contract law. She also alleges violations of her federal rights, including her First and Fourteenth Amendment rights arising from the defendants' conduct *after Harris I* was decided.

terminate your appointment as Coordinator of Social Work. This change is effective immediately. Your salary will be unchanged for this academic year."

¶5.     Following her removal from the coordinator position, Harris filed her federal court suit against MVSU, et al. in federal court alleging that her removal was in retaliation for her contacting CSWE. The federal district court, by summary judgment dismissed all of Harris' claims, the federal law claims with prejudice and the pendent state law claims without prejudice. *Harris I*, 899 F. Supp. at 1577. Harris then brought suit in state court for her state law claims arising out of her removal as program director. The trial court dismissed the case, finding that Harris' claims were barred by the doctrine of collateral estoppel. On appeal, this Court reversed and remanded the circuit court's decision finding that it erred in dismissing Harris' claim because the federal district court did not address the merits of Harris' state law claims and dismissed them without prejudice. *Harris v. IHL*, 731 So. 2d 588 (Miss. 1999).

¶6.     On January 21, 1999, Harris requested two years of leave from MVSU in order to take the position as Project Director with the Delta Health Partners Healthy Start Initiative Program of Tougaloo College. Harris' leave request had to be approved through an extensive leave procedure within the chain of command at MVSU, beginning with her immediate supervisor and ultimately requiring the approval of MVSU President, Dr. Newman.[2]  If anyone within the chain of command denied the request, the inquiry ended.     Hoque, Harris' immediate supervisor, did not recommend granting her request because of personnel problems. On February 1, 1999, Harris was informed by Dr. Saliba Mukoro, the Chair of the Criminal Justice Department, via letter that her request for two years of leave could not be granted because

---

[2] At the time of Harris' removal as program coordinator in 1994, William Sutton was President of MVSU. Lester Newman was President of MVSU at the time of Harris' termination in 1999 and is currently President of MVSU.

classes were in session and her request would be disruptive to the students and that she was needed at MVSU for an upcoming accreditation review. Mukoro informed Harris that he would approve one year of leave for the following year if properly requested. Harris had already accepted the position with Delta Health before she was notified that her leave request had been denied. She did not return to MVSU for the remainder of the spring semester.

¶7.     On February 8, 1999 Harris requested medical leave. Harris continued to request medical leave for the remainder of the semester. Her medical leave request were approved by Hoque and Mukoro and sent for further review. On February 16, 1999, Harris wrote to President Newman requesting leave of absence without pay for the 1999-2000 academic year. On March 4, 1999, Harris requested to be placed on unpaid medical leave for March 1, 1999, until May 17, 1999.

¶8.     On April 1, 1999, MVSU requested further documentation to support Harris' medical leave request. Harris was then notified via letter on April 22, 1999 that Newman had denied her February 16, 1999 request for leave of absence, and that additional information regarding her leave request would soon be requested. Harris' physician, Dr. Cassada, wrote to MVSU explaining that she had been treating Harris for symptoms of stress and anxiety. Dr. Cassada did not state that Harris was unable to work. Dr. Cassada referred other medical inquiries to Dr. Wheeler, who explained that Harris had a severe medical illness, namely stress, that was exacerbated by her employment at MVSU.

¶9.     Harris was then given notice of the University's intention to terminate her due to her absence without approval and for taking the position with Delta Health Partners. Within the notice, Harris was informed that she was entitled to a hearing. Newman stated in his affidavit that Harris was afforded a pre-termination meeting and that only afterwards did he decide to recommend her termination to the Board of Trustees of State Institutions of Higher Learning.

4

¶10.    After making his decision to terminate Harris, Newman met with the Legal Committee of the IHL Board and discussed the Harris personnel matter. The Committee recommended to the Full IHL Board to approve Newman's recommendation of termination of Harris. Her termination was discussed and approved by the Board of Trustees of State Institutions of Higher Learning.

¶11.    After the Board approved Harris' termination, she filed a grievance and also sought review of the Board's decision. The Board declined Harris' request. Harris then filed her second amended complaint. The defendants filed a motion to dismiss the state law claims for lack of jurisdiction and a motion for summary judgment as to the remaining claims.

¶12.    After Harris filed her second amended complaint, the State Auditor was notified that Harris had continued to receive compensation from MVSU after she abandoned her position with MVSU by accepting the position with Delta Health Partners and not returning to work at MVSU during the Spring semester. The State Auditor notified Harris that she owed approximately $28,000 and that the Attorney General would be notified if the amount was not paid. Harris sought to amend her complaint to add the notification of the State Auditor as furtherance of the conspiracy and retaliatory acts against her. Harris also filed a Motion to Compel MVSU to produce a representative to be deposed regarding the notification of the State Auditor.

¶13.    The trial court never ruled on Harris' motions, instead it granted the defendants' motion to dismiss as to Harris' state law claims for lack of jurisdiction because of her failure to file a "notice of claim" pursuant to the MTCA. The trial court then granted the defendants' motion for summary judgment as to Harris' §§ 1981, 1983, 1985, and 1986 claims and her state law breach of contract claims. Harris appeals, asserting that summary judgment was inappropriate because (1) the defendants conspired to cause her to lose her position as a tenured faculty member; (2) there was a causal connection between Harris' lawsuit

5

and her request for leave; (3) Harris established due process and first amendment violations; (4) her removal as program coordinator constituted a breach of contract; and (5) MVSU breached the implied covenant of good faith and fair dealing. She also asserts that the trial court erred in dismissing her state law claims for failure to comply with the notice provision of the MTCA, and that the trial court erred by not allowing her to amend her pleadings and by not ruling on her motion to compel MVSU to present a representative for depositions.

## DISCUSSION

### I. Did the Trial Court err in granting summary judgment to the Appellees?

¶14. This Court employs a de novo standard of review of a trial court's grant or denial of a summary judgment and examines all the evidentiary matters before it, admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law, summary judgment should forthwith be entered for the movant. Otherwise, the motion should be denied. Issues of material fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says to the opposite. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the non-movant should be given the benefit of any doubt. *Heigle v. Heigle*, 771 So.2d 341, 345 (Miss. 2000) (citing *McCullough v. Cook*, 679 So.2d 627, 630 (Miss. 1996)). Due to the public interest in protecting governmental officials and entities from the costs associated with defending civil lawsuits, summary judgment is especially applicable when governmental or official immunity is in issue. *McQueen v. Williams*, 587 So.2d 918, 924 (Miss. 1991).

¶15. Claims articulated under the federal code require the application of federal substantive law. We exercise concurrent jurisdiction with federal courts in the enforcement of federally created rights. ***Burrell v. Miss. State Tax Comm'n***, 536 So.2d 848, 863 (Miss. 1988).

### Concerted Activity and Conspiracy

¶16. Harris alleged in her complaint that the defendants conspired to have her terminated from MVSU and that MVSU knew of the conspiracy and had a duty to prevent it. She cites 42 U.S.C. §§ 1983, 1985, and 1986 in her complaint. The trial court dismissed her claims finding that the defendants were entitled to qualified immunity.

### Qualified Immunity.

¶17. The trial court found the defendants were all entitled to qualified immunity as to Harris' §§ 1983 and 1985 claims. Qualified immunity was established to reconcile two competing interests: the compensation of persons whose federally protected rights have been violated against the public interest that civil lawsuits against public officials will hinder their ability to perform their duties. Qualified immunity has therefore been recognized to protect "all but the plainly incompetent or those who knowingly violate the law." ***Malley v. Briggs***, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

¶18. The test for qualified immunity is two fold, with the threshold question being whether the plaintiff has suffered a violation of a clearly established constitutional right.

> First, the court must determine whether the plaintiff has alleged a violation of a clearly established constitutional right. If the plaintiff fails this step, the defendant is entitled to qualified immunity. If she is successful, the issue becomes the objective legal reasonableness of the defendant's conduct under the circumstances.

***Bluitt v. Houston Indep. Sch. Dist***., 236 F. Supp. 2d 703, 728 (S.D. Tex. 2002).

¶19.    Whether an official is entitled to qualified immunity depends on the "objective reasonableness of the action" assessed in light of the legal rules that were "clearly established" at the time it was taken.' *Id.* at 728, quoting *Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994) (quoting *Texas Faculty Ass'n v. University of Tex. at Dallas*, 946 F.2d 379, 389 (5th Cir. 1991)). "Clearly established" means that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Elkins v. McKenzie*, 865 So. 2d 1065, 1077 (Miss. 2003), quoting *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have known that their conduct violated the United States Constitution or the federal statute as alleged by the plaintiff. *Id*. The "defendant's circumstances" include facts known to the defendant. A defendant's subjective state of mind is irrelevant as to whether that defendant is entitled to qualified immunity because qualified immunity hinges upon the objective reasonableness of the defendant's acts. *Id.*, citing *Anderson,* 107 S.Ct. at 3040. If the defendants pled qualified immunity and show that they were governmental officials whose positions involve discretionary duties, the plaintiffs then have the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *Elkins*, 865 So.2d at 1077.

¶20.    Harris contends that the actions taken by the defendants showed a deliberate indifference toward her regarding the termination of her as program director and her ultimate termination form MVSU. She argues that the defendants' actions were intentional and that they are not entitled to qualified immunity. However, she does not show anything in particular that would subject any of the defendants to liability. She alleges a conspiracy but does not offer any credible evidence of how any individual defendant

8

conspired against her. The defendants are entitled to qualified immunity because Harris' termination was reasonable. Harris was terminated for abandoning her position at MVSU. She accepted the position with Delta Health Partners before her leave was approved. She continued at the position with Delta Health even after her initial leave request was denied by Mukoro. She also requested medical leave that enabled her to work at Delta Health while supposedly too sick to work at MVSU. In effect, she abandoned her position at MVSU when she never returned to MVSU during the spring semester.

*Conspiracy*

¶21.    Harris alleged in her complaint that the defendants conspired to have her terminated in violation of §§ 1983, 1985 and 1986. In her brief, she again contends that the defendants engaged in a concerted activity to cause her to lose her job.

¶22.    A conspiracy has been defined in a § 1983 setting as an agreement between two or more people to participate in an unlawful act or in a lawful act in an unlawful manner. ***Hobson v. Wilson***, 737 F.2d 1, 51 (D.C. Cir. 1984). The agreement can be proven by indirect and circumstantial evidence since there is rarely direct evidence of an agreement to conspire, ***Montgomery v. Hughes***, 716 F. Supp. 261, 263 (S.D. Miss. 1988). Since the conclusion that a conspiracy exists is often based upon inferences that may fairly be drawn from the behavior of the alleged conspirators, summary judgment is usually inappropriate in § 1983 cases. ***Id***. However, inferences favorable to the plaintiff must be within the range of reasonable probability and it is the duty of the court to withdraw the case from the jury if the necessary inference is so tenuous that it rests merely upon speculation and conjecture. ***Id***. at 265, citing ***Radiatio Dynamics v. Goldmuntz***, 464 F.2d 876, 887 (2d Cir. 1972). Proof of an overt act or a course of conduct by defendants does not necessarily support a reasonable inference of a conspiracy. ***Hughes***, 716 F. Supp. at 264, citing ***Gramenos v. Jewel Cos.***, 797 F.2d 432 (7th Cir. 1986).

9

¶23.    Section 1985 protects against the formation of private conspiracies for the purpose

of depriving an individual of equal protection under the laws or equal privileges and immunities under the

law.   Harris never states what subsection of the statute she claims was violated, although it appears that

subsection three is the only applicable subsection.

> (3) Depriving persons of rights or privileges
>
> If two or more persons in any State or Territory conspire or go in disguise
> on the highway or on the premises of another, for the purpose of
> depriving, either directly or indirectly, any person or class of persons of
> the equal protection of the laws, or of equal privileges and immunities
> under the laws; or for the purpose of preventing or hindering the
> constituted authorities of any State or Territory from giving or securing to
> all persons within such State or Territory the equal protection of the laws;
> or if two or more persons conspire to prevent by force, intimidation, or
> threat, any citizen who is lawfully entitled to vote, from giving his support
> or advocacy in a legal manner, toward or in favor of the election of any
> lawfully qualified person as an elector for President or Vice President, or
> as a Member of Congress of the United States; or to injure any citizen in
> person or property on account of such support or advocacy; in any case
> of conspiracy set forth in this section, if one or more persons engaged
> therein do, or cause to be done, any act in furtherance of the object of
> such conspiracy, whereby another is injured in his person or property, or
> deprived of having and exercising any right or privilege of a citizen of the
> United States, the party so injured or deprived may have an action for the
> recovery of damages occasioned by such injury or deprivation, against any
> one or more of the conspirators.

42 U.S.C. § 1985.

¶24.    To state a claim under § 1985(3), a plaintiff must allege:  (1) a conspiracy of two or more person;

(2) for the purpose of depriving, either directly or indirectly, any person or class of persons equal protection

of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the

conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or

privilege of a citizen of the United States.  *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S.

10

825, 828-29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983); *Griffin v. Breckenridge*, 403 U.S. 88, 102-03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

¶25. To recover for a conspiracy to deny an individual such as Harris the equal protection of the law under 42 U.S.C. § 1985(3) the plaintiff must demonstrate that the defendants were motivated by an invidious discriminatory animus. *Griffin*, 403 U.S. at 102. "[T]o survive a summary judgment motion on a Title 42 U.S.C. § 1985(3) claim, the plaintiff must show a prima facie case: (1) that the conspirators had the intent to deprive her of the equal protection of the laws or of equal privileges and immunities under the laws; and (2) that there was some class based animus behind the conspirators' actions. . . Mere statements of ultimate fact or conclusions of law are insufficient to raise an issue to defeat summary judgment." *Jefferson v. City of Hazlehurst*, 936 F. Supp. 382, 391 (S.D. Miss. 1995), citing *Lechuga v. Southern Pac. Transp. Co.*, 949 F.2d 790, 798 (5th Cir. 1992).

¶26. Harris claims that the defendants conspired to convince her that her leave request had been approved then terminate her for abandoning her position at MVSU once she accepted the position at Tougaloo College. Harris contends that a conspiracy can be inferred because:

(1) She had previously been granted leave by MVSU to attend a fellowship similar to the one at Tougaloo College.

(2) After requesting leave, Carolyn Byrd, the human resource director, congratulated her on her leave.

(3) Dr. Hoque gave her verbal approval for her leave request.

(4) Her request for one year leave without pay was never approved or disapproved by the Vice President of Academic Affairs but was disapproved by the President.

(5) Harris never received the letter from Hawkins dated April 22, 1999 (informing her that her request had been denied) until the meeting with Hawkins in June 1999.

(6) She also asserts that the deposition of Fred Williams proves that the defendants conspired against her. Williams testified that Dr. Nelson, acting Vice President of Academic affairs, told him that Harris should drop her lawsuit if she was serious about her leave.

(7) The defendants notifying the State Auditor that she had been accepting compensation after she abandoned her position were further retaliatory acts against her.

11

¶27. Harris' claims are without merit. She has failed to offer any evidence that points to a conspiracy or an agreement between the defendants to cause her to lose her job. Although a conspiracy will hardly ever be proven by direct evidence, Harris has offered nothing except her allegations that the defendants conspired against her. The inferences Harris asks this Court to make regarding Hoque's verbal approval of, and Byrd's congratulations on, her leave request are invalid because Harris knew that Mukoro declined her initial leave request. She also knew that for any leave request to be granted, the request would have to eventually be approved in writing by the President and until his approval was given, she was not authorized to take leave. She also presented nothing that proves class-based animus.

*§ 1986*

¶28. Harris also alleges that MVSU knew of the conspiracy against her and had a duty and responsibility to prevent it. She cites 42 U.S.C. § 1986 in her complaint. In her brief, she once again argues that the defendants should have prevented the alleged conspiracy. Section 1986 places a duty on a party to prevent a violation of Section 1985 if that party has knowledge of the violation and has the authority to prevent it.

¶29. A valid § 1985 claim is a prerequisite for a § 1986 claim. *Bryan v. City of Madison*, *Miss.*, 213 F.3d 267, 276 (5th Cir. 2000), citing *Newberry v. East Tex. State Univ.*, 161 F.3d 276, 281 n.2 (5th Cir. 1998). Therefore, Harris' § 1986 claim only survives if her § 1985 claim is valid. Harris' § 1986 claim fails because she cannot prove a violation of § 1985.

*First Amendment and § 1983 due process violations.*

¶30. Harris states in her brief that the trial court erred by finding that she failed to establish any First Amendment or due process violations pursuant to 42 U.S.C. § 1983. Section 1983 provides a cause of action for persons deprived of their rights and privileges by someone acting under the color of State law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

¶31.     On summary judgment for a § 1983 action, the plaintiff has the burden of showing by adequate evidence seven elements. *Jefferson*, 936 F. Supp. at 391. The plaintiff must show: (1) There was a clear and constitutional right in the plaintiff. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); (2) There was a deprivation of that clear right, privilege or immunity secured to the plaintiff by the U.S. Constitution. *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); (3) The defendants acted under color of State law. *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); (4) There exists a direct casual connection without intervening factors between the deprivation and some injury to the plaintiff. *Canton v. Harris*, 489 U.S. 378, 387-88, 109 S.Ct 1197, 1203-05, 103 L.Ed.2d 412 (1989); (5) The act or omission by the defendant was intentional or at least deliberately indifferent to the Constitutional or Federal law rights of the plaintiff. *Griffith v. Johnson*, 899 F.2d 1427, 1435 (5th Cir. 1990); (6) The plaintiff suffered actual injury. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308, 106 S.Ct 2537, 2543, 91 L. Ed.2d 249 (1986); and (7) Damages as a proximate result of the injury. *Carey v. Piphus*, 435 U.S. 247, 264, 98 S.Ct. 1042, 1052, 55 L. Ed.2d 252 (1986)

*First Amendment*

13

¶32. The trial court found that Harris failed to show any First Amendment violations. In her brief, Harris argues that she was terminated as program coordinator in retaliation for her contacting CSWE concerning Hoque's qualifications. This claim is barred. The district court dismissed this claim with prejudice in *Harris I*, 899 F. Supp. at 1568-72. Harris states "Harris, after her case was remanded by this Court in 1999 made a request for leave and again was subjected to violation of her First Amendment Rights with intentional interference with her protected property interest in her employment." It appears that Harris is arguing that her termination was in violation of the petition clause of the First Amendment. The defendants argue that Harris' termination was due to her abandonment of her position at MVSU.

¶33. The First Amendment prohibits a public employer from taking actions designed to suppress the rights of public employees to participate in public affairs. *Connick v. Myers*, 461 U.S. 138, 145-46, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983). In order to prevail on a cause of action under § 1983 for an employee's First Amendment retaliation claim, the plaintiff must show (1) an adverse employment action; (2) as a result of speech involving a matter of public concern; (3) that his interest in commenting on the matter of public concern outweighed the defendant's interest in promoting efficiency; and (4) that the adverse action was motivated by the protected speech. *Harris v. Victoria Indep. Sch. Dist*., 168 F.3d 216, 220 (5th Cir. 1999). In *Connick*, the Supreme Court stated that the First Amendment does not prevent a public employer from taking action in response to an employee's expression that does not touch upon a matter of public concern. 461 U.S. at 145. The Fifth Circuit has found that courts will not interfere with personnel decisions when a public employee speaks not as a citizen upon public matters but as an employee upon matters of only personal interest. *Rathjen v. Litchfield*, 878 F.2d 836, 841 (5th Cir. 1989). The law is the same where the act which gave rise to the retaliation claim is the filing of a lawsuit. *Id.* at 842.

14

¶34. The question in the present case is whether Harris' filing of her lawsuit is a matter of public concern or only personal interest. In *Harris I*, the district court found the genesis of this case, Harris' letter to CSWE, was not a matter of public concern. 899 F. Supp. at 1571. Harris' First Amendment claim is without merit. The letter that brought about her first lawsuit and is the alleged reason that she was retaliated against does not address a matter of public concern. The trial court did not err in granting summary judgment to the defendants on this issue.

*Due Process*

¶35. In her complaint, Harris alleged that the defendants violated both her substantive and procedural due process rights. In her brief, she states that she had a property right in her employment and that the defendants acted under color of state law. She does not state whether the trial court erred in finding that she failed to establish a procedural or substantive due process claim. Both will be discussed.

*Substantive Due process*

¶36. Substantive due process ensures individual liberty against "certain government actions regardless of the fairness of the procedures used to implement them." *Hall v. Board of Trustees of State Institutions of Higher Learning*, 712 So.2d 312, 319 (Miss. 1998). Substantive due process prohibits infringement of fundamental liberty interest unless it is narrowly tailored to serve a compelling state purpose. *Reno v. Flores*, 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). A fundamental right is a right either explicitly or implicitly guaranteed by the constitution. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33-34, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). If the right infringed upon is not fundamental, yet a substantive due process challenge is lodged, the statute (or rule) will be upheld so long as it is reasonably related to a legitimate state purpose. *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 124-25, 98 S.Ct. 2207, 2213, 57 L.Ed.2d 91 (1978).

15

¶37.     To prevail on a substantive due process claim, the plaintiff must show that the government's deprivation of a property interest was "arbitrary or not reasonably related to a legitimate governmental interest." *Hall*, 712 So.2d at 319, quoting *Williams v. Texas Tech. Univ. Health Sciences Ctr.*, 6 F.3d 290, 294 (5th Cir. 1993). "If a state action is so arbitrary and capricious as to be irrational, its infringement on a constitutionally protected interest may violate substantive due process rights." *Bluitt*, 236 F. Supp. 2d at 731, quoting *Harrington v. Harris*, 118 F.3d 359, 368 (5th Cir. 1997). Substantive due process only requires that public officials exercise judgment in a nonarbitrary manner when depriving an individual of a protected property interest.     *Bluitt*, 236 F. Supp. 2d at 731, quoting *Texas v. Walker,* 142 F.3d 813, 818 (5th Cir. 1998).

¶38.     To establish a due process violation in the public employment context, the complaining party must first show that he had a legally cognizable property interest in her continued employment. *Bluitt*, 236 F. Supp. 2d at 731 (collecting authorities). To prove a property interest the plaintiff must have:

> more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. . . . Property interest, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from independent sources such as state law. . .

*Hall*, 712 So.2d at 319, quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). A contract right constitutes an enforceable property interest. *University of Miss. Med. Ctr. v. Hughes*, 765 So.2d 528, 536 (Miss. 2000), citing *Wicks v. Miss. Valley State Univ.*, 536 So.2d 20, 23 (Miss. 1988).

16

¶39. To survive summary judgment, Harris must present evidence from which a reasonable jury could conclude that there was no rational basis for her termination. Harris' termination was based on her decision to accept the position with Delta Health after being denied leave and while claiming to be too sick to work at MVSU. She has offered no evidence to substantiate her allegations that her termination was arbitrary or capricious.

*Procedural Due Process*

¶40. Procedural due process claims require a two-step analysis: (1) does the plaintiff have a property interest entitled to procedural due process protection; and (2) if yes, what process is due. *Bluitt*, 236 F. Supp. 2d at 733. Procedural due process requires that a public employee receive notice and an opportunity to respond. *Harris I*, 899 F. Supp. at 1574. Notice is effective if the employee receives an oral or written explanation of the charges against her. *Id*. An adequate opportunity to be heard entails at least some kind of a hearing. *Id.*, citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 536, 105 S.Ct. 1487, 1490, 84 L.Ed.2d 494 (1985). However, procedural due process does not require that the plaintiff be given all the procedural safeguards found in a trial type hearing. *Cafeteria & Rest. Workers v. McElroy*, 367 U.S. 886, 894, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

¶41. In the present case, Harris alleges that her pretermination hearing was a mere formality, stating that Newman had already decided to terminate her before her hearing. She contends that because she was not listed in the upcoming class schedule that was printed before her hearing, it is proof that Newman was predisposed to terminating her. We disagree. The record shows that Harris was given notice of her termination, was given a pre-termination hearing, and that the IHL board was fully informed of the situation when it decided to uphold Newman's decision to terminate Harris. She also was able to request review of the Board's decision, which was denied.

*State Law Breach of Contract Claims*: *Removal as program coordinator*

¶42.     Harris claims that the defendants breached her employment contracts by (1) removing her from the position of coordinator of the Social Works Program in 1994 and (2) terminating her from her  tenured faculty position in 1999.

¶43.     As to the 1994 contract for the coordinator position, Harris  contends  that she was not given written notice, an opportunity to be heard, and a hearing regarding her removal from the coordinator position. The trial court found that the position as coordinator of the Social Works Program was an at-will administrative position, and that Harris had no property or contractual rights to that position. It also found that Harris' termination from the tenured faculty position was justified based on Harris' abandonment of her position at MVSU.

¶44.      Harris' employment contract for the Coordinator of the Social Works Program stated that the contract was subject to the policies and by-laws of the Board.  Harris argues that as a tenured faculty member, Board Policy 2.7.4 allows her only to be terminated for cause.  Section 2.7.4  states:

> a)     Termination of service of tenured faculty member is made only
> under these extraordinary circumstances:
> 1)     Financial exigencies as declared by the Board.
> 2)     Termination or reduction of programs, academic or
> administrative units as approved by the Board
> 3)     Malfeasance, ineffeciency or contumacious conduct; or
> 4)     For cause.

¶45.     Harris' reliance on Board Policy 2.7.4 is misplaced.  According to the uncontested affidavit of Thomas Layzell, the Commissioner of Higher Education for the State of Mississippi, the coordinator position was an administrative  position that was an "at will" positions.  Administrative positions are subject to Board Policy 402.01B, which states:

> B.     Administrative Officers:

> Faculty status of full-time administrative officers will necessarily vary with the size and complexity of the institution. A faculty member who has academic rank and rights of tenure in the Corps of Instruction and who accepts an appointment to an administrative office shall retain his/her academic rank and rights of tenure as an ex officio member of the Corps of Instruction but shall have not rights of tenure in the administrative office to which he has been appointed.

¶46.    Mississippi adheres to the employment at will doctrine, which states "absent an employment contract expressly providing to the contrary, an employee may be discharged at the employer's will for good reason, bad reason, or no reason at all, excepting only reasons independently declared legally impermissible." *Shaw v. Burchfield*, 481 So.2d 247, 253-54 (Miss. 1985). This Court has modified the employment at will doctrine by carving out a narrow public policy exception which allows an employee at-will to sue for wrongful discharge where the employee is terminated because of (1) refusal to participate in illegal activity or (2) reporting the illegal activity of his employer to the employer or anyone else. *Buchanan v. Ameristar Casino Vicksburg, Inc*., 852 So.2d 25, 26-27 (Miss. 2003); *McArn v. Allied Terminix Co.*, 626 So.2d 603, 606-07 (Miss. 1993).

¶47.    Harris alleges that she was removed from the Coordinator Position in retaliation for "blowing the whistle" on MVSU concerning Hoque's credentials. Mississippi's Whistle Blowing statutes are located in Miss. Code Ann. § 25-9-171, et seq. (Rev. 2002). The statute defines a whistle blower as:

> an employee who in good faith reports an alleged improper governmental action to a state investigative body, initiating an investigation. For purposes of the provisions of this act, the term "whistleblower" also means an employee who in good faith provides information to a state investigative body, or an employee who is believed to have reported alleged improper governmental action to a state investigative body or to have provided information to a state investigative body but who, in fact, has not reported such action or provided such information.

Miss. Code Ann. § 28-9-171(j).

¶48.     A state investigative body is defined as the "Attorney General of the State of Mississippi, the State Auditor, the Mississippi Ethics Commission, the Joint Legislative Committee on Performance Evaluation and Expenditure Review or any other standing committee of the Legislature, or any district attorney of the State of Mississippi." Miss. Code Ann. § 28-9-171(g).

¶49.     Harris' argument is without merit.  Even if Harris was terminated for contacting CSWE, she is not entitled to one of the employment at will exceptions because she does not meet the definition of a whistle blower as announced in the statute.

¶50.     Harris also contends that the trial court erred in determining MVSU did not breach the implied covenant of good faith and fair dealing in its contract with Harris.  She argues that the defendants breached the duty of good faith and fair dealing by their  retaliatory acts that were intentionally made toward her because she questioned the credentials of  Hoque and also because she refused to settle her previous lawsuit or resign.

¶51.     Every contract contains an implied covenant of good faith and fair dealing in performance and enforcement.  *Morris v. Macione*, 546 So.2d 969, 971 (Miss. 1989). "Good faith is the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party. The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness." *Cenac v. Murry*, 609 So.2d 1257, 1272 (Miss. 1992).  Bad faith, in turn, requires a showing of more than bad judgment or negligence; rather, "bad faith" implies some conscious wrongdoing "because of dishonest purpose or moral obliquity." *Bailey v. Bailey*, 724 So.2d 335, 338 (Miss.1998).

¶52.     The trial court did not err in granting summary judgment for the defendants on this issue.  Harris has offered no valid evidence that the defendants acted in bad faith.

## II. Did the Trial Court err in dismissing all of Appellant's state law claims with the exception of breach of contract for lack of jurisdiction?

¶53. The trial court dismissed all of Harris' state law claims except the breach of contract claim because Harris failed to substantially comply with the notice provision of the MTCA. Harris argues that the grievance she submitted to the defendants constitutes substantial compliance with the MTCA. MVSU does not recognize that Harris' grievance is in the record and argue that Harris gave no notice.

¶54. This Court employs a de novo standard of review of a trial court's grant or denial of a motion to dismiss. When considering a motion to dismiss, the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond a reasonable doubt that the plaintiff will be unable to prove any set of facts in support of his claim. *T.M. v. Noblitt*, 650 So. 2d 1340, 1342 (Miss. 1995). The MTCA sets out the requirements for a valid notice of claim.

(1) After all procedures within a governmental entity have been exhausted, any person having a claim for injury arising under the provisions of this chapter against a governmental entity or its employee shall proceed as he might in any action at law or in equity; provided, however, that ninety (90) days prior to maintaining an action thereon, such person shall file a notice of claim with the chief executive officer of the governmental entity. Service of notice of claim may also be had in the following manner: If the governmental entity is a county, then upon the chancery clerk of the county sued; if the governmental entity is a municipality, then upon the city clerk. **If the governmental entity to be sued is a state entity as defined in Section 11-46-1(j), service of notice of claim shall be had only upon that entity's chief executive officer.** If the governmental entity is participating in a plan administered by the board pursuant to Section 11-46-7(3), such chief executive officer shall notify the board of any claims filed within five (5) days after the receipt thereof.

(2) Every notice of claim required by subsection (1) of this section shall be in writing, and shall be delivered in person or by registered or certified United States mail. Every notice of claim shall contain a short and plain statement of the facts upon which the claim is based, including the

circumstances which brought about the injury, the extent of the injury, the time and place the injury occurred, the names of all persons known to be involved, the amount of money damages sought and the residence of the person making the claim at the time of the injury and at the time of filing the notice.

Miss. Code Ann. § 11-46-11 (emphasis added).

¶55.    In the present case, Harris did not substantially comply with the MTCA notice provisions because: (1) the grievance letter does nothing to inform MVSU or IHL of Harris' intent to make a claim; (2) the document she submitted was part of the internal appeals process, and the MTCA requires a notice of claim after administrative remedies are exhausted, and; (3) there is no indication that the Legislature intended the IHL to be the "chief executive officer" for all state institutions of higher learning for purposes of the MTCA.

¶56.    Harris argues that she substantially complied with the notice provisions of the MTCA by filing a grievance with the Board of Trustees of IHL. The MTCA's definition of state entities includes colleges and universities. Miss. Code Ann. § 11-46-11(j). Therefore, the President of MVSU is the chief executive officer of the university.  IHL is not a substitute for the President of MVSU. MVSU's argument is correct; there was no notice given.  In terms of technical compliance with Miss. Code Ann § 11-46-11(2), the grievance was in writing and it sets out the facts and circumstances surrounding the alleged injury.  It gives Harris' name and address, as well as the reasons she was filing the grievance.  However, the grievance was defective in that it fails to state the extent of the alleged injury or the amount of damages sought.  In addition, it does not state Harris' residence at the time of the alleged injury.  The grievance was not addressed to any particular person, although it was ultimately sent to IHL.  The letter did not state that a lawsuit would be filed.  Although this document is defective in most respects, it may come close to satisfying the technical

22

requirements of Section 11-46-11(2) so far as affording the entities a reasonable opportunity to investigate the allegations.

¶57. This Court has stated that the standard of substantial compliance is as follows:

> What constitutes substantial compliance, while not a question of fact but one of law, is a fact-sensitive determination. In general, a notice that is filed within the [requisite] period, **informs the municipality of the claimant's intent to make a claim** and contains sufficient information which reasonable affords the municipality an opportunity to promptly investigate the claim satisfies the purpose of the statute and will be held to substantially comply with it.

*Williams v. Clay County*, 861 So.2d 953, 956 (Miss. 2003) (quoting *Carr v. Town of Shubuta*, 733 So.2d 261, 263 (Miss. 1999) (emphasis in original)).

¶58. In the present case, Harris' grievance did not inform the entities of her intent to make a claim. As Harris points out in her own brief, the purpose of the MTCA notice requirement "is to inform governmental boards, commissions, and agencies of claims against them." *Alexander v. Miss. Gaming Comm'n*, 735 So.2d 360, 362 (Miss. 1999). While the letter at issue contained a discussion of the facts surrounding Harris' grievance, it was an administrative appeals document to IHL. It merely serves the function of giving notice that Harris had a grievance and wished to receive all the relief that **MVSU itself** could give her; that is, this document was a request for internal relief or remedies. It did not, however, imply or state that a lawsuit would be filed in connection with her dismissal as is required. Clearly, it was not notice that Harris would subsequently file a request for relief from a court of law.

¶59. The record indicates that "it is the policy of the [IHL] to allow faculty personnel decisions to be appealed to the [IHL]." Moreover,

> These appeals may take place only after the aggrieved faculty member has exhausted all administrative remedies at the institutional level. In the event that an appeal to the [IHL] is requested by the aggrieved party, the Institutional Executive Officer shall transmit to the Board the full report of the grievance/tenure committee concerning the matter appealed.

23

**The individual allegedly aggrieved will be allowed to submit a written statement of his grievance** to the Commissioner within a thirty (30) day period following notification of the decision of the Institutional Executive Officer. Review by the [IHL] is not a matter of right, but is within the sound discretion of the [IHL].

Harris' filing of a grievance letter merely completed the administrative appeals process. That is, filing a grievance is the last step in seeking administrative relief.

¶60. The MTCA notice provisions require such completion: **"After all procedures within a governmental entity have been exhausted**, any person having a claim for injury arising under the provisions of this chapter against a governmental entity or its employee **shall...file a notice of claim with the chief executive officer of the governmental entity**." Miss. Code Ann. § 11-46-11(1) (Rev. 2002) (emphasis added). Thus, the statute clearly contemplates two steps: first, an aggrieved person must exhaust agency remedies, and, second, notice of an impending lawsuit shall be given before filing suit. Under a plain meaning interpretation of this statute, the grievance at issue here is part of the internal appeals process or agency procedures and, therefore, cannot be considered a notice of claim. Holding that this mere grievance constitutes substantial compliance would, in effect, read out the two-step process contemplated by the statute. Such a holding would merge the filing of claim notices with the exhaustion of agency remedies.

¶61. We hold that the IHL was not the "chief executive officer" in this case for purposes of the MTCA. The chief executive officer is the MVSU President, and no notice was served on him.

¶62. Here, the trial court did not err in dismissing all of Harris' state law claims except the breach of contract. Harris has failed to substantially comply with the notice provisions of the MTCA.

### III. Did the Trial Court err in failing to rule and grant Appellant's Motion to Compel regarding to allowing

**of the taking of 30(b)(6) deposition of the Appellee, MVSU?**

**IV.     Did the Trial Court err in failing to allow Appellant to amend her pleadings to conform with the proof to be presented at trial in regard to information provided by Appellee MVSU, et al to the Office of the State Auditor?**

¶63.    Harris filed a motion to compel requesting MVSU and the IHL Board to provide a representative for the taking of a Rule 30(b)(6) deposition on April 11, 2002, and also a Motion to Amend her Pleadings on April 26, 2002, to add the defendants' providing information to the State Auditor as further proof of the retaliatory acts committed by the defendants.  The trial court heard arguments on the defendants' motion to dismiss and summary judgment on May, 2, 2002. The trial court never ruled on Harris' motions.

¶64.    Leave to amend the pleadings should be granted when justice so requires.

> (b) Amendment to Conform to the Evidence. When issues not raised by the pleadings are tried by expressed or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the maintaining of the action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence. The court is to be liberal in granting permission to amend when justice so requires.

Miss. R. Civ. P.  15(b).    The trial court's denial of a motion to amend a complaint is subject to an abuse of discretion and, unless convinced that the trial court abused its discretion, this Court is without authority to reverse. ***Church v. Massey***, 697 So.2d 407, 413 (Miss. 1997). *See also **Broadhead v.***

25

*Terpening*, 611 So.2d 949, 953 (Miss.1992). Amendments are to be denied if allowing the amendment would prejudice the defendant. *Hester v. Bandy*, 627 So.2d 833, 839 (Miss. 1993). Applications to amend the pleadings should be prompt and not the result of lack of diligence. *TXG Intrastate Pipeline Co. v. Grossnickle*, 716 So.2d 991, 1011 (Miss. 1997). "Amendments which are permitted in the latter stages of litigation may deny the important policy favoring finality of judgments and the expeditious termination of litigation. Thus, the policy to freely grant amendments is not allowed to encourage delay, laches and negligence." *Wal-Mart Super Ctr. v. Long*, 852 So.2d 568, 571 (Miss. 2003). In the present case, Harris was aware of the State Auditor's investigation as early as July 2001 but did not seek to amend her complaint until April 2002. Harris had nine months to amend her complaint to add informing the State Auditor as a claim, yet she waited until two months before the trial for a claim that had been ongoing since 1995 to amend her complaint Although amendments are to be freely granted, they should be denied if it will prejudice the defendant. Here, the trial court did not abuse its discretion.

## CONCLUSION

¶65.    We affirm the trial court's grant of summary judgment in favor of the defendants as to Harris' §§ 1981, 1983, 1985, and 1986 claims. We also affirm the trial court's dismissal of Harris' state law claims for failure to comply with the notice provision of the MTCA. We further find that the trial court did not err by not allowing Harris to amend her pleadings and by not ruling on Harris' motion to compel MVSU to present a representative for depositions. Therefore, we affirm the trial court's judgment.

¶66.    **AFFIRMED.**

**SMITH, C.J., COBB, P.J., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. DIAZ, GRAVES AND RANDOLPH, JJ., NOT PARTICIPATING.**